UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHERYL COUDERT,                              :
                                             :
                 Plaintiff,                  :
                                             :
        v.                                   :        Docket No. 303 CV 0324 (MRK)
                                             :
JANNEY MONTGOMERY SCOTT, LLC,                :
                                             :
                 Defendant.                  :        SEPTEMBER 30, 2004

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S REQUEST FOR ADDITIONAL DISCOVERY

Pursuant to the Honorable Judge Mark R. Kravitz's order on September, 21, 2004,

Defendant Janney Montgomery Scott, LLC hereby submits the following Memorandum of Law in

Opposition to Plaintiff's Request for Additional Discovery.

## PRELIMINARY STATEMENT

Plaintiff's intended motion to compel "information relating to a sexual harassment claim

against Plaintiff's manager at the Darien, Connecticut office" is not likely to lead to the discovery

of admissible evidence at trial.  Lacking any direct evidence of age or gender discrimination,

Plaintiff now attempts to evoke an aura of discrimination based on another employee's allegations

of sexual harassment against a branch manager, Jack Engelskirger ("Engelskirger"), who was not

involved in the decision to terminate Plaintiff and with whom Plaintiff ceased working under five

years prior to her termination.

Plaintiff's former manager, Engelskirger, ceased having any supervisory responsibilities

over Plaintiff once she joined the Fairfield office in early 1997.  Moreover, once Plaintiff left the

Darien office, Engelskirger no longer participated in decisions affecting Plaintiff's employment

status.  In fact, Plaintiff was not terminated until January 11, 2002, approximately five years after

Plaintiff left the Darien office and ceased working under the supervision of Engelskirger. Thus,

evidence regarding Engelskirger's treatment of other employees after December 1996 is not only

time barred, it is too remote in time to support the claims asserted in this case. Furthermore,

evidence regarding a claim of sexual harassment, which is a claim separate and distinct from the

age and gender discrimination claims advanced in this case, are irrelevant and not likely to lead to

the discovery of admissible evidence. Plaintiff's request for additional discovery should be denied.

### FACTS

Plaintiff ceased working in the Darien office under the supervision of Engelskirger at the

end of December 1996. For the next five years, Plaintiff worked in the Fairfield office under

Richard Avallon's ("Avallon") supervision. Avallon and Engelskirger never discussed Plaintiff or

her performance issues after she transferred. (See Ex. A, Avallon Depo 29:8-10; 32:10-12; See Ex.

B, Engelskirger Depo 72: 3-18). Once Plaintiff began working out of the Fairfield office,

Engelskirger no longer had any supervisory authority over Plaintiff and had no influence over

Plaintiff's employment status.

Plaintiff felt that her working conditions improved during her first year after transferring to

the Fairfield office. In a fax dated January 5, 1998 sent to executives at Janney Montgomery Scott,

Plaintiff's husband indicated that Plaintiff's "work environment and employment conditions have

improved dramatically" since joining the Fairfield office. (Ex. C, 1/5/98 Fax from R. Coudert);

(see also Ex. D, Plaintiff Depo 63: 13-25; 64:1-5; 142:9-25; 143:1-14) (testifying that she had no

difficulties with Avallon other than that she was initially denied a sales aide and that she wanted an

office, as opposed to working in the common area, known as the bull pen).

Although Plaintiff's performance did initially improve following her transfer, her

performance during her five years in the Fairfield office still lagged far behind her colleagues.

STM_182019_2/TKADAR

Moreover, despite efforts by Janney Montgomery Scott, such as providing Plaintiff with an office and a sales assistant, perquisites Plaintiff's production numbers did not warrant but items which Plaintiff insisted were necessary to improve her production numbers, Plaintiff's production numbers nevertheless continued to deteriorate. On January 11, 2002, Plaintiff was ultimately terminated because she consistently ranked as the lowest producing full-time employee in the Fairfield office each year that she was employed there. In fact, at the time Plaintiff was terminated, her production numbers were so low that her salary, which was completely driven by commission payments, failed to cover her employee medical insurance premium contribution.

Bren Brennan ("Brennan"), the alleged sexual harassment claimant, was hired in the Darien office in 1997, after Plaintiff had transferred to the Fairfield office. (See Ex. B, Engelskirger Depo 32:17-33:19). Brennan left the company in September 1999. (See Ex. B, Engelskirger Depo 33:21-23). Any alleged incident related to Brennan's claim therefore must have occurred between 1997 and 1999, three to five years before Plaintiff was discharged in January of 2002. Moreover, her claim involved a claim of sexual harassment, as opposed to the claims of age and gender discrimination advanced by Plaintiff.

## ARGUMENT

### A)    Evidence Regarding an Alleged Sexual Harassment Claim is Irrelevant to the Present Case.

A plaintiff may not use evidence of one type of discrimination to prove discrimination of another type. Simonetti v. Runyon, No. Civ.A.98-2128, 2000 WL 1133066, at *6 (D.N.J. Aug. 7, 2000) (excluding evidence of racial and religious discrimination to support claims of disability discrimination). A supervisor's alleged statements or acts evidencing one form of discrimination have no tendency to prove that the supervisor demonstrated an unrelated form of discrimination. Kelly v. Boeing Petroleum Services, Inc., 61 F.3d 350, 358 (5th Cir. 1995) (finding supervisor's

STM_182019_2/TKADAR

alleged discriminatory statements regarding race or sex were irrelevant and had no tendency to prove the supervisor discriminated against the plaintiff on the basis of his handicap).

Plaintiff will not be able to establish any link between the sexual harassment claims charged by Brennan and the claims asserted in this case. Allegations about discrimination related to matters occurring "in other places, at other times, sometimes years previously and involving matters wholly unrelated to claims at issue" are not relevant. Murphy v. Board of Education of the Rochester City School District, 273 F. Supp. 2d 292, 302 (W.D.N.Y. 2003). The Murphy court further explained that allegations of systematic racial discrimination that did not relate to any action taken against the plaintiff were not relevant because they did not affect the plaintiff. Id. The plaintiff failed to establish a logical connection between other acts of discrimination and the alleged acts of discrimination against plaintiff. Id. "Discrimination in the air, so to speak, will not do." Ticali v. Roman Catholic Diocese of Brooklyn, 41 F. Supp. 2d 249, 262 (E.D.N.Y. 1999) (declining to find that possible discrimination against students was relevant to teacher's discrimination claim).

In the present case, there is no logical connection between Plaintiff's claims of age and gender discrimination under Title VII, and the sexual harassment claim allegedly made by Brennan. At no point has Plaintiff alleged that Engelskirger sexually harassed her or exposed her to a sexually charged environment. Brennan's claims did not involve Plaintiff in any way. In fact, Plaintiff was long gone from the Darien office at the time Brennan was hired. Once Brennan was hired, Engelskirger no longer supervised Plaintiff and played no role in employment decisions affecting Plaintiff. Evidence regarding an alleged sexual harassment claim allegedly lodged against Engelskirger by another employee three to five years prior to Plaintiff's termination is irrelevant and prejudicial and should be excluded.

**B)**  **Alleged Acts Related to the Prior Harassment Claim Are too Remote to be Relevant to Plaintiff's Claims.**

It is well established that remoteness in time is a sufficient reason for excluding evidence of allegedly discriminatory acts.  Manning v. New York University, 2001 U.S. Dist. LEXIS 510, 98 Civ. 3300(NRB) at *5 n.3 (S.D.N.Y. Jan. 24, 2001) (excluding evidence where alleged discrimination occurred approximately eight years prior to plaintiff's termination); Mitchell v. New York Blood Center, 225 F.3d 646 at *3 (2d Cir. 2000) (excluding evidence where statements were too remote in time); Ray v. Tandem Computers, 63 F.3d 429, 434 (5th Cir. 1995) (finding that supervisor's remark, made four years prior to the challenged conduct, was too remote in time to support an inference of sex discrimination); Souffrant v. Rose House, No. 96 CV 4657, 1998 WL 896878, at *4 (E.D.N.Y. Dec. 22, 1998) (finding that racial slur made five to seven years before employer's alleged acts of discrimination was too remote in time to be relevant).  If the evidence is deemed to be remote in time, it will be excluded as irrelevant.  Manning, 2001 U.S. Dist. LEXIS 510 at *5 n.3; Souffrant, 1998 WL 896878 at *4.  Here, the lack of relevance is exacerbated by the fact that, unlike the cases cited, the remote event did not involve Plaintiff in any way.  Rather, it involved another employee, Brennan.

Generally, acts occurring two and one half years or more before an adverse employment action will be deemed too remote in time to be admitted into evidence.  Gomes v. Nynex, No 94 CIV. 17770(KTD), 1999 WL 642908, at *5 (S.D.N.Y. Aug. 24, 1999); In re United Cerebral Palsy Ass'ns, 58 B.R. 492, 496 (S.D.N.Y. 1986).  In Gomes v. Nynex, the court found that an allegedly discriminatory question asked two and one half years before Plaintiff's firing was too remote in time to provide credible evidence of the motive behind Plaintiff's termination. 1999 WL 642908 at *5.  In In re United Cerebral Palsy Ass'ns, alleged conversations that occurred approximately three years prior to plaintiff's termination were too remote in time to support plaintiff's inference of

discrimination. 58 B.R. at 496. Likewise, in the present case, any discriminatory acts that may have occurred in connection with Brennan's claim must have occurred between 1997 and 1999, three to five years before Plaintiff was discharged. Evidence related to Engelskirger's alleged treatment of Brennan is therefore too remote in time to be relevant to Plaintiff's claim. Furthermore, the fact that the incident at issue involves a different claimant renders the evidence that much more irrelevant.

Remote evidence is also routinely excluded due to the risk of unfair prejudice it will likely cause the defendant. Stair v. Lehigh Valley Carpenters Local Union No. 600, 813 F. Supp. 1116, 1120 (E.D. Pa. 1993). The Stair court excluded evidence relating to acts of discrimination and harassment that occurred four years before the acts alleged in the case before the court. Id. The court reasoned that because the prior acts were so remote in time, their probative value was outweighed by the danger of unfair prejudice to the defendants. Id. In addition, evidence of prior claims should be excluded for unfair prejudice and the risk of confusion of the issues if the claim does not involve the same harasser. McCleland v. Montgomery Ward & Co., Inc., No. 95 C 23, 1995 WL 571324, at *4 (N.D. Ill. 1995). The McCleland court excluded evidence of prior claims based on unfair prejudice and the significant litigation time that would be expended on trying collateral issues related to the prior claim. Id. at *3. The court sought to avoid a "trial within a trial." Id.

Similarly, evidence of prior claims in the present case should be excluded due to the risk of unfair prejudice against Janney Montgomery Scott and a likely confusion of the issues. Any incident that Brennan complained of was sufficiently remote in time that introduction of her claims would be significantly prejudicial to Janney Montgomery Scott. Such evidence is further

- 6 -

prejudicial and irrelevant given that Plaintiff has not alleged that Engelskirger sexually harassed her.

**C)      Engelskirger had no Influence on the Decision to Discharge Plaintiff.**

Claims of a supervisor's allegedly discriminatory acts may not be used as evidence of discrimination if that supervisor does not participate in the adverse employment action complained of. McLee v. Chrysler Corp., 109 F.3d 130, 137 (2d Cir. 1997) (finding that supervisor's alleged bias provided no basis for imputing to manager an invidious motivation for the plaintiff's discharge, where supervisor was not consulted about the decision to fire); Kelly v. Boeing Petroleum Services, Inc., 61 F.3d 350, 358 (5th Cir. 1995) (finding supervisor's acts of unrelated discrimination were irrelevant, particularly given that the supervisor was not one of the executives who made or participated in the ultimate employment decisions complained of). Moreover, even if the allegedly biased supervisor did participate in the adverse employment decision, such evidence will be excluded if the allegedly biased supervisor had only minimal influence on the employment decision. Mitchell v. New York Blood Center, 225 F.3d 646 at *3 (2d Cir. 2000) (excluding evidence of statements where the allegedly biased persons had only an attenuated influence over the employment decision).

Engelskirger no longer supervised Plaintiff once she left the Darien office in December of 1996. After this time, Plaintiff worked under Richard Avallon's supervision in the Fairfield office. Engelskirger played no role in her daily employment. Because Engelskirger no longer influenced management decisions regarding Plaintiff's employment status after she left the Darien office, any evidence regarding his actions following December 1996 should be deemed irrelevant and not likely to lead to the discovery of admissible evidence in the present case.

**D)**     <u>**Plaintiff Cannot Establish a Continuing Violation of Harassment or Discrimination**</u>

District courts may hear claims that were raised before the EEOC involving discriminatory acts that occurred within 300 days of the date the EEOC charge was filed. <u>Miner v. Town of Cheshire,</u> 126 F.Supp.2d 184, 189 (D. Conn. 2000). Claims based on acts occurring outside of this time period are time barred and will be excluded. <u>Id.</u> Plaintiff's EEOC complaint was filed on July 3, 2002. Evidence of alleged discriminatory acts occurring before September 7, 2001 are therefore time barred. Brennan's employment with Janney Montgomery Scott ended in September of 1999. Any evidence pertaining to Brennan would therefore be time barred, irrespective of whether or not the evidence was deemed relevant.

A narrow exception to the 300 day limitation allows the statutory period to be tolled based on evidence of a continuing violation if one related event occurred within the statutory period. <u>Miner,</u> 126 F.Supp.2d at 189. A continuing violation may be based on either a series of related acts taken against a single individual or the maintenance of a company-wide policy or practice of discrimination or harassment. <u>Fitzgerald v. Henderson,</u> 251 F.3d 345, 362 (2d Cir. 2001); <u>Cruz v. Coach Stores, Inc.,</u> 202 F.3d 560, 569 n.4 (2d Cir. 2000). Courts in the Second Circuit disfavor application of the continuing violation doctrine and hold that only compelling circumstances warrant use of this exception. <u>Miner,</u> 126 F.Supp.2d at 190. Examples of continuing violations pursuant to a broad discriminatory system include use of discriminatory seniority lists or employment tests. <u>Id.</u> *citing* <u>Van Zant v. KLM Royal Dutch Airlines,</u> 80 F.3d 708, 713 (2d Cir. 1996); <u>Lambert v. Genesee Hosp.,</u> 10 F.3d 46, 53 (2d Cir. 1993). No such comparable discriminatory policy or practice was enforced by Janney Montgomery Scott. Moreover, Plaintiff has produced no evidence of such a practice or policy.

STM_182019_2/TKADAR

In order to establish a continuing violation based on a series of related acts taken against a single individual, the alleged discriminatory acts must be related closely enough to constitute a continuing violation. Fitzgerald, 251 F.3d at 362. Plaintiff must establish the existence of a pattern of harassing behavior with evidence of repeated and continuous occurrences of harassment. Miner, 126 F.Supp.2d at 191. For example, the court in Fitzgerald v. Henderson found a continuing violation when the plaintiff's manager criticized her work on a daily basis, berated her about her hours and productivity, criticized her for working overtime, and forced her to work overtime when she was not scheduled to do so. 251 F.3d at 363. The acts constituting the violation were all performed by the same manager and were all directed towards the plaintiff. Id. Plaintiff in this case cannot use evidence of incidents that may have occurred between Engelskirger and Brennan to establish a series of related acts. Under the continuing violation theory, such acts must be directed at a single individual. Acts directed at Brennan have no connection to acts associated with Plaintiff's claims, and therefore may not be introduced under a continuing violation theory.

Similarly, the court in Cruz v. Coach Stores found that a plaintiff's allegations were time barred where the alleged harasser left the company four years before the plaintiff brought charges. Cruz, 202 F.3d at 569 n.4. There was no continuing violation where there was no indication that the two alleged harassers acted in concert, or that their behavior was related in any way other than being similarly offensive. Id. The earlier harassment was too far removed from the more recent harassment by a different party to form the basis of a continuing violation claim. Id. In the present case, Plaintiff's transfer to a new office was equivalent to working in a new company, because Engelskirger no longer had any supervisory authority over her and was no longer involved in employment decisions affecting Plaintiff. In fact, both Engelskirger and Avallon both testified that

STM_182019_2/TKADAR

they never discussed Plaintiff or her performance at the time she transferred from the Darien office to the Fairfield office. (See Ex. A, Avallon Depo 29:8-10; 32:10-12; See Ex. B, Engelskirger Depo 72: 3-18). Plaintiff cannot establish that the alleged discriminatory acts occurring in the Fairfield office by Avallon should be viewed as a continuation of the alleged discriminatory act occurring in the Darien office by Engelskirger. Plaintiff's transfer to the Fairfield office in early 1997, a transfer which Plaintiff acknowledges greatly improved her work environment, precludes a finding that a pattern of harassing behavior continued from the Darien office to the Fairfield office. Any and all alleged evidence pertaining to Plaintiff's treatment in the Darien office should be time barred.

## CONCLUSION

Based on the foregoing, Plaintiff's intended motion to compel "information relating to a sexual harassment claim against plaintiff's manager at the Darien, Connecticut office," is not likely to lead to the discovery of admissible evidence at trial. Plaintiff's request for additional discovery should therefore be denied.

WHEREFORE, Defendant Janney Montgomery Scott, LLC respectfully requests that the Court sustain its objection to Plaintiff's Motion for Modification of Scheduling Order Regarding Discovery dated August 31, 2004.

THE DEFENDANT
JANNEY MONTGOMERY SCOTT, LLC
BY ITS ATTORNEYS,

_____
Marc L. Zaken (CT 03110)
mzaken@edwardsangell.com
John G. Stretton (CT 19902)
jstretton@edwardsangell.com
EDWARDS & ANGELL, LLP
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901
(203) 353-6819

STM_182019_2.DOC/TKADAR

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S REQUEST FOR ADDITIONAL DISCOVERY was mailed via first class mail, postage prepaid to counsel for the Plaintiff, addressed as follows:

  Andrew B. Bowman, Esquire
  1804 Post Road East
  Westport, CT 06880

this 30TH  day of September, 2004.

           _____
           John G. Stretton

- 11 -

# *EXHIBIT A*

Coudert v. Janney Montgomery

March 2, 2004                                           Richard Avalon

Page 1

1                    UNITED STATES DISTRICT COURT
                              for the
2                     DISTRICT OF CONNECTICUT
3

   - - - - - - - - - - - - - - - -X
4

   CHERYL COUDERT,
5

                         PLAINTIFF,
6

        vs.                          3:03 CV 0324 (MRK)
7

   JANNEY MONTGOMERY SCOTT, LLC,
8

                         DEFENDANT.
9  - - - - - - - - - - - - - - - -X
10
11
12
13              D E P O S I T I O N
14        The deposition of RICHARD AVALON was taken
15  pursuant to notice at the Law Offices of Andrew B.
16  Bowman, 1804 Post Road East, Westport, Connecticut,
17  before Viktoria V. Stockmal, license #00251, a notary
18  public in and for the State of Connecticut, on Tuesday,
19  March 2, 2004 at 10:03 a.m.
20
21
22
23
24
25

Coudert v. Janney Montgomery

March 2, 2004                                                    Richard Avalon

Page 29

1    meetings together.  And I'm sure that's how I met him.

2         Q       Do you know whether he held any position at

3    the Darien office?

4         A       He was branch manager.

5         Q       Do you know when the Darien office was

6    established?

7         A       I don't.

8         Q       Did you ever talk to Jack Engelskirger about

9    Cheryl Coudert's employment at the Darien office?

10        A       Not that I recall.

11        Q       Is Jack Engelskirger still with Janney

12   Montgomery Scott?

13        A       No.

14        Q       Do you know when he left?

15        A       My guess is somewhere around '98 or '99.

16        Q       How did you learn that he had left?

17        A       I think there was a memo sent around that --

18   to all the branches that Jack had left the firm.

19        Q       Do you know why he left the firm?

20        A       I guess he was terminated.

21        Q       Do you know why he was terminated?

22        A       I don't.

23        Q       Do you know whether there had been any

24   claims made against him by a particular woman who had

25   worked in the Darien office?

Coudert v. Janney Montgomery

March 2, 2004                                          Richard Avalon

Page 32

1      A      I guess someone in the office must have told

2    me.

3      Q      Did he ever tell you?

4      A      No.

5      Q      Did you discuss it with him?

6      A      Never.

7      Q      Who in the office told you?  Do you recall?

8      A      I'm not sure exactly.  It might have been

9    Cheryl.

10     Q      Did you ever discuss Cheryl Coudert with

11   Jack Engelskirger?

12     A      No.

13     Q      Did he ever talk to you about his

14   experiences with Ms. Coudert at Darien?

15     A      No.

16     Q      Did he ever tell you whether they got along?

17   Or whether there was conflict in that relationship?

18                  MR. BOWMAN:  Object.  It's been asked

19   and answered.

20   BY MR. BOWMAN:

21     Q      You can answer the question?

22     A      No.

23     Q      So your testimony is that you never

24   discussed Cheryl Coudert with Jack Engelskirger?

25                  MR. STRETTON:  Objection.

SANDERS, GALE & RUSSELL
(203) 624-4157

## CERTIFICATE

STATE OF CONNECTICUT  )
                      )      SS     NEWTOWN
COUNTY OF FAIRFIELD   )

❋

       I, VIKTORIA V. STOCKMAL, a Notary Public duly commissioned and qualified in and for the county of New Haven, State of Connecticut, do hereby certify that pursuant to the notice of deposition, the said witness came before me at the aforementioned time and place and was duly sworn by me to testify to the truth and nothing but the truth of his/her knowledge touching and concerning the matters in controversy in this cause; and his/her testimony reduced to writing under my supervision; and that the deposition is a true record of the testimony given by the witness.

       I further certify that I am neither attorney of nor counsel for, nor related to or employed by any of the parties to the action in which this deposition is taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, or financially interested in the action.

❋       IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this _15th_ day of _____March_____, 2004.

VIKTORIA V. STOCKMAL, RMR, CRR
Notary Public
CSR License #00251

My commission expires October, 2005.

❋

**SANDERS, GALE & RUSSELL**

# *EXHIBIT B*

COUDERT v. MONTGOMERY                                    March 12, 2004

```
1

2      IN THE UNITED STATES DISTRICT COURT

3      FOR THE DISTRICT OF CONNECTICUT

4      ----------------------------x
                                   :

5                                  :

       CHERYL COUDERT,             :

6                                  :

            Plaintiff,             :

7                                  : Civil Action

       -versus-                    : 3:03 CV 0324 (MRK)

8                                  :

       JANNEY MONTGOMERY SCOTT, LLC,:

9                                  :

            Defendant.             :

10                                 :

       ----------------------------x

11

12

13

14            Deposition of JOHN W. ENGELSKIRGER,

15     taken pursuant to the Federal Rules of Civil

16     Procedure, at the Law Offices of Andrew B.

17     Bowman, Esq., 1804 Post Road East, Westport,

18     Connecticut, before Lea M. Palombo, LSR #00184,

19     RPR, a Notary Public in and for the State of

20     Connecticut, on Friday, March 12, 2004, at

21     1:20 p.m.

22

23

24

25
```

Page 32

1    February '95?  Is that when, approximately, she

2    commenced her employment?

3         A.    If you say so, I'll agree with it.

4         Q.    Okay.

5         A.    I don't have a problem with that.

6         Q.    All right.  During that period of time,

7    were there any other female brokers employed in

8    the Darien office?

9         A.    No, there was not.

10        Q.    All right.

11        A.    There were licensed sales assistants,

12    but they were not brokers.

13              MR. STRETTON:  The period of time

14    you're referring to is the February '95 to

15    December '96?

16              MR. BOWMAN:  Correct.

17        Q.    When was Miss Brennan hired, if you

18    recall, in the Darien office?

19        A.    '98 roughly.

20        Q.    And between her hiring and

21    Miss Coudert's departure --

22        A.    Excuse me, excuse me.  Probably '99.

23    No, wait a minute now, let me think here.  No,

24    you know, I'll tell you it was probably -- it

25    might have been '97, and I think this occurrence

COUDERT v. MONTGOMERY

March 12, 2004

Page 33

```
 1    happened in '98.

 2         Q.    And by occurrence --

 3         A.    No, excuse me again.

 4         Q.    Take your time, if you want to take a

 5    moment.

 6         A.    No, I'm having trouble with dates.

 7         Q.    That's all right.

 8         A.    Okay.  Because I remember she wasn't

 9    there in '99.  I think she had her child maybe

10    in '98 so didn't go.

11         Q.    You're talking about Miss Brennan?

12         A.    Miss Brennan.  So that might have

13    happened in '97.  I probably hired her in '97.

14         Q.    So you believe the occurrence which led

15    to her claim --

16         A.    The, quote, occurrence.

17         Q.    Right.  Occurred in '97?

18         A.    I believe so.  I'm not sure of that.

19    That's a matter of record.

20         Q.    And when, how -- withdrawn.

21               When did she leave JMS, that is,

22    Miss Brennan?

23         A.    She resigned September '99, I think.

24         Q.    Do you know why she resigned?

25         A.    For another job.
```

SANDERS, GALE & RUSSELL                              (203)624-4157

COUDERT v. MONTGOMERY                                    March 12, 2004

Page 72

```
 1        Q.    Okay.

 2        A.    Dick -- Oh, gees, sorry.

 3        Q.    Did Avollon ever call you during the

 4   year '97, '98, or any year through 2001, to get

 5   your views on Cheryl Coudert?

 6        A.    I don't know.  Don't remember.  I don't

 7   know if he was the manager when Cheryl went up

 8   there, I'm not sure.  Fortuna may have been.  I

 9   don't remember.

10        Q.    How about Fortuna, did he call you to

11   get your views on Cheryl Coudert when she came

12   there?

13        A.    No, I don't think so.  John wouldn't.

14   Dick might have, but I don't remember.

15        Q.    Do you recall any conversation that you

16   had, either with Mr. Avollon or Mr. Fortuna,

17   about Miss Coudert?

18        A.    No.

19        Q.    Did you discuss Cheryl Coudert with

20   either Mr. Doyle or Mr. Berardino or Mary Ann

21   Melchioree, after -- let's say from December of

22   1996, the beginning of '96, through February --

23        A.    Yes.

24        Q.    -- 1997?

25        A.    Yes, yes.
```

# C E R T I F I C A T E

I hereby certify that I am a Notary Public, in and for the State of

Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition

was by me duly sworn and thereupon testified as appears in the foregoing

deposition; that said deposition was taken by me stenographically in the

presence of counsel and reduced to print under my direction, and the

foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither of counsel nor related to either of the

parties to said suit, nor am I interested in the outcome of said cause.

Witness my hand and seal as Notary Public this _____30_____ day of

_____March_____ , 2004

_____
NOTARY PUBLIC

My Commission Expires:
    12- 2008

# *EXHIBIT C*

RENÉ J. COUDERT
STURBRIDGE HILL ROAD
NEW CANAAN, CONNECTICUT 06840

# PERSONAL AND CONFIDENTIAL FAX

VIA FAX:  (215)587-0484

TO:        JANNEY MONTGOMERY SCOTT, INC.

FROM:      RENÉ COUDERT

DATE:      JANUARY 5, 1998

## EYES ONLY:

Maryann Melchiorre
Howard B. Scherer, Esq.
Norman Wilde

One page plus cover page

RENÉ J. COUDERT
STURBRIDGE HILL ROAD
NEW CANAAN. CONNECTICUT 06840

# PERSONAL AND CONFIDENTIAL

TO:     MARYANN MELCHIORRE
        HOWARD B. SCHERER, ESQ.

FROM:   RENÉ COUDERT

DATE:   JANUARY 5, 1998

RE:     1. COUDERT LETTER TO WOLITARSKY DATED JULY 26, 1996
        2. SCHERER LETTER TO NEIGHER DATED FEBRUARY 24, 1997


Coudert referenced letter states: "Unfair and stressful working conditions... have caused me to seek medical help..." "Employment conditions and performance standards to which I am subjected are discriminatory."

Scherer referenced letter states: "JMS has made every effort to help Mrs. Coudert successfully perform." "We are continuing our efforts to assist her in overcoming her unhappiness..."

While Mrs. Coudert's work environment and employment conditions have improved dramatically, so too has her performance. Yet, JMS continues to overlook and excuse unfair and discriminatory treatment of her. She qualified (at $65K) for the Florida Sales Training trip that begins this week. She has not been invited. Why? Her manager and regional manager have both tried to help. The problem seems to be at a higher level. This situation is both demoralizing and stressful. This inequity needs to be set right and I encourage you to work with your people and do so promptly.

I will call you, Howard to determine what further steps, if any, need to be taken by Mrs. Coudert and/or me to resolve this matter.

cc:   Norm Wilde- Your assistance in encouraging fair and non-discriminatory treatment would be greatly appreciated.

# *EXHIBIT D*

```
 1              UNITED STATES DISTRICT COURT
                        for the
 2               DISTRICT OF CONNECTICUT

 3   - - - - - - - - - - - - - - - - - -X

 4
     CHERYL COUDERT,
 5
                         PLAINTIFF,
 6
               vs.                  3:03 CV 0324  (MRK)
 7
     JANNEY MONTGOMERY SCOTT, LLC,
 8
                         DEFENDANT.
 9   - - - - - - - - - - - - - - - - - -X

10
                      VOLUME I
11

12

13             D E P O S I T I O N

14         The deposition of CHERYL COUDERT was taken

15   pursuant to notice at the law offices of Edwards &

16   Angell, 3 Stamford Plaza, 301 Tresser Blvd., Stamford,

17   Connecticut, before Viktoria V. Stockmal, license #00251,

18   a notary public in and for the State of Connecticut, on

19   Thursday, February 19, 2004, at 10:01 a.m.

20

21

22

23

24

25
```

63

```
1   thought about it, I could --
2       Q       I understand.
3       A       But it's hard when motivations are not
4   explained and reasons are not given, it's -- it purely
5   leaves you to speculate.
6       Q       Now I know earlier you had told me that with
7   Jack you didn't think gender was an issue but that -- and
8   that's when we began to talk about the age.  Now let me
9   ask about gender.  Is there any concrete examples you can
10  give me that you were treated by anyone at Janney
11  differently because you were a female?
12      A       Not specifically, no.
13      Q       Did you have any difficulty -- you moved at
14  one point from the Darien to the Fairfield office?
15      A       Yes.
16      Q       Did the office environment improve when you
17  went to Fairfield?
18      A       Yes.  For a while.
19      Q       When did it change?
20      A       It changed -- I moved to Fairfield at the
21  end of March, I believe.  And in November the office
22  expanded and new space was added, new offices were added.
23  But yet even though some of those offices were left
24  empty, I was left in the bullpen which again made no
25  sense to me as an experienced broker who's also a
```

```
 1    certified financial planner and need privacy and a decent
 2    environment because a lot of my business had been, in the
 3    past, conducted face-to-face.  And having no privacy and
 4    sitting out in the bullpen was not conducive to any
 5    client meetings.
 6         Q      Were there any other brokers that were
 7    placed in the bullpen?
 8         A      Yes.  One was Jack Henriques and one was
 9    Steve Kraus who had moved up from the Darien office.
10    Actually all three of us were refugees from Darien.
11         Q      So all three of you had been with Janney for
12    some time, a number of years?
13         A      Jack had, I think Steve Kraus was relatively
14    new.
15         Q      Were you ever given an explanation as to why
16    Jack, Steve and yourself were placed in the bullpen?
17         A      No.
18         Q      Do you have any feeling for why you were
19    placed in the bullpen?
20         A      No.
21         Q      Were you ever aware of a certain commission
22    figure that you were supposed to attain that would
23    entitle you to a private office?
24         A      No.
25         Q      Was there ever a commission line where
```

142

```
 1  up and walked out the door.

 2       Q       When this comment was made, at this point,

 3  there were a number of other brokers that were older than

 4  you in the Fairfield office?

 5       A       There were only three.  Two, possibly three.

 6  I mentioned before.  Charlie Cook, John Fortuna and

 7  possibly Al Baron, but that would be by a matter of

 8  months.  I was --

 9       Q       When Dick Avalon took over as manager, did

10  you have any difficulties with Dick?

11       A       No.  Except that when I was left in the

12  bullpen, I mentally decided to give that location six

13  months to see if I could function there.  And after six

14  months, in May of '98, I went to see Mr. Avalon to

15  explain to him what I needed and that I couldn't function

16  like that and that I needed a sales aide.  All my filing

17  was piling up.  And it's the only time that the subject

18  of my production came up.  And -- because, obviously, I

19  brought it up peripherally and then Dick, at the end of

20  our conversation asked me if my location and lack of

21  sales support was influencing my production.

22            And I remember my answer almost verbatim.  I

23  said absolutely.  I said I'm demoralized, my ego is

24  deflated and I feel like a second class citizen.  And

25  that is not conducive to efficient sales functions.
```

1    Self-esteem and self-confidence are very important to be

2    effective.  And that was the end of the conversation and

3    he mumbled something about speaking to Larry Doyle.  The

4    regional manager.  I didn't hear another word about it

5    until I was told in December on the 21st I believe that I

6    was going to be cut back to 25 percent for lack of

7    production.

8          And I remember saying to Dick, that isn't

9    fair, you know, I asked for very simple things that other

10    brokers have and how can I be punished when I wasn't

11    responded to.  And he said something about he would try

12    again with Larry Doyle.  And then he told me that he was

13    getting nowhere.  And that is when he asked me to fill in

14    that sales plan.  And I did.

15    Q      Prior to being told in December of '98, that

16    you were going to be cut back because your production did

17    not exceed 125,000, did you receive notice before then of

18    this policy?

19    A      The only thing I had was the memo that came

20    out in November of '96, when I was still at Darien.

21    However, in the letter, it was either from Dick or Larry

22    with copies to each other, a copy of that 1996 memo was

23    included.  In other words, the "policy" was being applied

24    and resurrected.

25    Q      Why do you say resurrected?

```
1                              CERTIFICATE

2

    STATE OF CONNECTICUT  )
3                         )    SS   NEWTOWN
    COUNTY OF FAIRFIELD   )
4

5

6

7           I, VIKTORIA V. STOCKMAL, a Notary Public duly
    commissioned and qualified in and for the county of New
8   Haven, State of Connecticut, do hereby certify that
    pursuant to the notice of deposition, the said witness
9   came before me at the aforementioned time and place and
    was duly sworn by me to testify to the truth and nothing
10  but the truth of his/her knowledge touching and
    concerning the matters in controversy in this cause; and
11  his/her testimony reduced to writing under my
    supervision; and that the deposition is a true record of
12  the testimony given by the witness.

13          I further certify that I am neither attorney of
    nor counsel for, nor related to or employed by any of the
14  parties to the action in which this deposition is taken,
    and further that I am not a relative or employee of any
15  attorney or counsel employed by the parties thereto, or
    financially interested in the action.

16          IN WITNESS WHEREOF, I have hereunto set my hand
    and affixed my notarial seal this 25th day of February,
17  2004.

18

19      _____
            VIKTORIA V. STOCKMAL, RMR, CRR
20                 Notary Public
               CSR License #00251
21

22  My commission expires October, 2005.

23

24

25
```

**VIKTORIA V. STOCKMAL - CRR, RMR**
**(203) 270-3674**