UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHERYL COUDERT, | : |
| Plaintiff, | : |
| v. | : Docket No. 303 CV 0324 (MRK) |
| JANNEY MONTGOMERY SCOTT LLC, | : |
| Defendant. | : NOVEMBER 12, 2004 |

**DEFENDANT JANNEY MONTGOMERY SCOTT LLC'S
LOCAL RULE 56(a)1 STATEMENT**

In compliance with Local Rule 56(a)(1), Defendant Janney Montgomery Scott LLC ("JMS") submits the following statement of material facts as to which there are no genuine issue to be tried:

1. Plaintiff Cheryl Coudert was hired by JMS as a securities broker, also known as a Registered Representative, on February 27, 1995. *Deposition of Plaintiff at 14-18 (Exhibit B); Notice of New Employee (Exhibit C).*

2. Plaintiff transferred to the Fairfield office of JMS in March of 1997. *Deposition of Plaintiff at 133-136 (Exhibit B).*

3. Jack Engelskirger, Plaintiff's supervisor in the Darien office, no longer supervised Plaintiff once she transferred to the Fairfield office. *Deposition of J. Engelskirger at 72 (Exhibit D); Deposition of R. Avallon at 29, 32 (Exhibit J); Affidavit of R. Avallon, ¶ 4 (Exhibit K).*

4. With the exception of her first month in the Fairfield office, Richard Avallon served as Plaintiff's direct supervisor, and the Fairfield office branch manager, up

1

        until Plaintiff's termination on January 11, 2002. *Deposition of Plaintiff at 137-138, 204-205 (Exhibit B)*.

5.     In 1997, Plaintiff ranked, in comparison to those brokers employed by JMS for the entire calendar year, as the lowest gross producer in the Fairfield office. *Deposition of Plaintiff at 239-242 (Exhibit B); 1997 and 1998 Rep Ranking (Exhibit N)*

6.     In 1997, Plaintiff's gross production equaled $129,227.40, which is a combination of her 1997 Fairfield gross production of $106,712.17 and her 1997 Darien gross production of $29,515.23. *Deposition of Plaintiff at 239-242 (Exhibit B); 1997 and 1998 Rep Ranking (Exhibit N); 1997 Rep Ranking for Darien (Exhibit W)*.

7.     In 1998, Plaintiff ranked, in comparison to those brokers employed by JMS for the entire calendar year, as the lowest gross producer in the Fairfield office. *Deposition of Plaintiff at 239-242 (Exhibit B); 1997 and 1998 Rep Ranking (Exhibit N)*

8.     In 1998, Plaintiff's gross production equaled $88,453.41. *Deposition of Plaintiff at 239-242 (Exhibit B); 1997 and 1998 Rep Ranking (Exhibit N)*.

9.     In 1999, Plaintiff ranked, in comparison to those brokers employed by JMS for the entire calendar year, as the lowest gross producer in the Fairfield office. *Deposition of Plaintiff at 239-242 (Exhibit B); 1999 Rep Ranking (Exhibit O)*.

10.     In 1999, Plaintiff's gross production equaled $56,297.66. *Deposition of Plaintiff at 239-242 (Exhibit B); 1999 Rep Ranking (Exhibit O)*.

11. In 2000, Plaintiff ranked, in comparison to those brokers employed by JMS for the entire calendar year, as the lowest gross producer in the Fairfield office. *Deposition of Plaintiff at 239-242 (Exhibit B); 2000 and 2001 Rep Ranking (Exhibit P).*

12. In 2000, Plaintiff's gross production equaled $113,831.54. *Deposition of Plaintiff at 239-242 (Exhibit B); 2000 and 2001 Rep Ranking (Exhibit P).*

13. In 2001, Plaintiff ranked, in comparison to those brokers employed by JMS for the entire calendar year, as the lowest gross producer in the Fairfield office. *Deposition of Plaintiff at 239-242 (Exhibit B); 2000 and 2001 Rep Ranking (Exhibit P).*

14. In 2001, Plaintiff's gross production equaled $29,183.50. *Deposition of Plaintiff at 239-242 (Exhibit B); 2000 and 2001 Rep Ranking (Exhibit P).*

15. Beginning in 1997, JMS implemented a minimum production level of one hundred twenty-five thousand dollars ($125,000.00) for all brokers in the New England regions registered more than three years. *November 27, 1996 Reduced Payout Memo (Exhibit Q); May 28, 1997 Reduced Payout Memo (Exhibit R); December 22, 1998 Reduced Payout Memo (Exhibit S); Deposition of Plaintiff at 114; 144-148 (Exhibit B).*

16. Plaintiff failed to meet the minimum production level of one hundred twenty-five thousand dollars ($125,000.00) in 1998, 1999, 2000 and 2001. *Deposition of Plaintiff at 239-242 (Exhibit B); 1997 and 1998 Rep Ranking (Exhibit N); 1999 Rep Ranking (Exhibit O); 2000 and 2001 Rep Ranking (Exhibit P).*

17. In 2001, Plaintiff's commission payments could not fully satisfy her monetary contribution to her medical insurance coverage plan. *Correspondence dated October 5, 2001 (Exhibit T); Correspondence dated November 8, 2001 (Exhibit U); Correspondence dated December 21, 2001 (Exhibit V); Deposition of Plaintiff at 166-168 (Exhibit B).*

18. On January 11, 2001, Plaintiff's employment with JMS was terminated. *Deposition of Plaintiff at 6 (Exhibit B).*

19. Plaintiff has no direct evidence that she was discriminated against on the basis of her age or sex. *Deposition of Plaintiff at 62-63 (Exhibit B).*

20. When the Fairfield office expanded in November of 1997, neither Plaintiff, Jack Henriques nor Steve Kraus were awarded a private office and each remained seated in the bullpen until the fall of 1999. *Deposition of Plaintiff at 64, 121-124, 235-236 (Exhibit B); Memo dated November 17, 1999 (Exhibit M).*

21. While Plaintiff was employed by JMS in its Fairfield office, each and every broker that was older than Plaintiff, namely, John Fortuna, Charles Cook and Al Baron, was assigned a private office and did not sit in the bullpen. *Deposition of Plaintiff at 61, 64, 121-124, 235-236 (Exhibit B).*

22. Offices and sales aides were provided to brokers in the Fairfield office based on production numbers. *Deposition of R. Avallon at 20 (Exhibit J); Affidavit of R. Avallon, ¶ 5 (Exhibit K); Deposition of Plaintiff at 122 (Exhibit B).*

23. When Plaintiff sought admission into Silver Hill Hospital in 1997, Plaintiff was enrolled in JMS's "Prucare Plus" medical insurance plan. Under this plan, all decisions regarding what services were and were not covered, the level

of coverage, and the timing and amounts of reimbursements were made by Prudential and not by JMS. *Employee Benefit Program Enrollment Form (Exhibit X); Benefit Acknowledgement (Exhibit Y); Deposition of Plaintiff at 18 (Exhibit B); Deposition of M. Melchiorre at 79-80 (Exhibit Z); February 12, 1997 Correspondence (Exhibit AA).*

24. The "Prucare Plus" medical insurance plan selected by Plaintiff was a point of service plan with an "in-network" and "out of network" design offered by Prudential insurance. *Deposition of M. Melchiorre at 78 (Exhibit Z).*

25. Plaintiff filed an Affidavit of Illegal Discriminatory Practice with the Connecticut Commission on Human Rights and Opportunities, which was considered duel filed with the Equal Employment Opportunities Commission, on July 3, 2002 against Janney Montgomery Scott LLC. *See Affidavit of Illegal Discriminatory Practice (Exhibit A).*

                      RESPECTFULLY SUBMITTED

                      THE DEFENDANT
                      JANNEY MONTGOMERY SCOTT LLC
                      BY ITS ATTORNEYS,

_____
Marc L. Zaken (CT 03110)
mzaken@edwardsangell.com
John G. Stretton (CT 19902)
jstretton@edwardsangell.com
EDWARDS & ANGELL, LLP
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901
(203) 353-6819

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing LOCAL RULE 56(a)1 STATEMENT was mailed via first class mail, postage prepaid to counsel for the Plaintiff, addressed as follows:

Andrew B. Bowman, Esquire
1804 Post Road East
Westport, CT 06880

this 12th day of November, 2004.

_____
John G. Stretton