UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHERYL COUDERT, | : | |
| Plaintiff, | : | |
| VS. | : | DOCKET NO: 3:03CV0324(MRK) |
| JANNEY MONTGOMERY SCOTT, LLC, | : | |
| Defendant | : | DECEMBER 20, 2004 |

**PLAINTIFF CHERYL COUDERT'S MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTION FOR
<u>SUMMARY JUDGMENT</u>**

**I. <u>The Legal Standard</u>**

For the following reasons, the motion for summary judgment filed in behalf of the defendant should be denied. In deciding a motion for summary judgment, the Court must determine whether there is a genuine issue of material fact, <u>Anderson vs. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion for summary judgment which in this case is the plaintiff; <u>Matsushita Elec. Indus. Co. vs. Zenith Radio Corp</u>., 475 U.S. 574, 587, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986).  The non-moving party may defeat the summary judgment motion by producing sufficient facts to establish there is a genuine issue of material fact for trial; <u>Celotex Corp. vs. Catrett</u>, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The Second Circuit has followed the Supreme Court's standard by holding, "[w]hen viewing the evidence, the court must assess the record in a light most favorable to the non-movant and…draw all reasonable inferences in [the non-movant's] favor."  <u>Weinstock vs. Columbia University</u>, 224 F.3rd 33, 41 (2nd Cir. 2000) <u>citing</u>, <u>Delaware & Hudson Railway Co. vs. Consolidated Rail Corp.</u>, 902 F.2d 174, 177 (2nd Cir. 1990).

### II. Plaintiff's Age and Sex Discrimination Claims Are Sufficient To Withstand Summary Judgment

The Age Discrimination in Employment Act (ADEA) prohibits employers from discriminating against employees on account of age where the employee is a member of a protected age group; that is, over 40 years of age, see 29 U.S.C. §631(a).  Title VII prohibits employers from discriminating against employees or any employee because of the individual's sex, see 42 U.S.C. §2000e-2(a)(1).  In order to establish a prima facie case of age discrimination, plaintiff must show that she was in the protected age group; that she was qualified for the position; that she was discharged or suffered adverse employment action; and that the discharge or

adverse employment action occurred under circumstances giving rise to an inference of discrimination; Norton vs. Sam's Club, et al, 145 F.3rd 114, 118 (2nd Cir. 1998). "The burden of establishing a prima facie case is not onerous and has been frequently described as minimal", Norton, 145 F.3d at 118; Scaria vs. Rubin, 117 F.3rd 652, 654 (2nd Cir. 1997) (per curiam). Once plaintiff has established a prima facie case, defendant has the burden of producing "'reasons for its actions, which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action'". Norton, supra, 145 f.3rd at 118, quoting Grady vs. Affiliated Cent, Inc., 130 F.3rd 553, 559 (2nd Cir. 1997) (quoting St. Mary's Honor Ctr. vs. Hicks, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d. 407 (1993). If the defendant meets its burden of producing an age-neutral reason for the discharge, the presumption of discrimination raised by the prima facie case 'drops out of the picture', Grady, 130 F.3rd at 559-60, see also Fischer vs. Vassar College, 114 F.3rd 1332, 1336 (2nd Cir. 1997) (in banc).

     The burden then returns to the plaintiff who must adduce sufficient evidence to allow a rational fact finder to infer that the employer was motivated in whole or in part by age discrimination. Norton, 145 F.3rd at 118; Fischer, 114 F.3rd at 1336. The plaintiff is entitled to rely "on the evidence constituting the prima facie case, together

with supportable inferences to be drawn from the false or erroneous character of the employer's proffered reason for the adverse action." Fischer, 114 F.3rd at 1333.

Plaintiff is not required to produce direct evidence of discrimination. Norton, 145 F.3rd at 119; see, Luciano vs. Olsten Corp., 110 F.3rd 210, 215 (2nd Cir. 1997). Plaintiff's case may be entirely circumstantial. Id., see also Burger vs. New York Institute of Technology, 94 F.3rd 830, 833-35 (2nd Cir. 1986) finding a jury question in an age discrimination case based wholly on circumstantial evidence. Indeed, plaintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence, since '[a]n employer who discriminates is unlikely to leave a 'smoking gun', such as a notation in an employee's personnel file, attesting to a discriminatory intent'". Rosen vs. Thornberg, 928 F.2d 528, 533 (2nd Cir. 1991). There will seldom be 'eyewitness' testimony as to the employer's mental processes.; Luciano, 110 F.3rd at 215, and the Second Circuit has rejected "the view that circumstantial evidence is inherently weaker than direct evidence", see, Norton, 145 F.3rd at 119; quoting United States vs. Sureff, 15 F.3rd 225, 229 (2nd Cir. 1994).

The Second Circuit has been clear in holding that "it is primarily the province of the jury to determine what inferences can be drawn from circumstantial evidence. So long as the evidence can reasonably support an inference of discrimination, the

court should not upset the jury's decision" and <u>a fortiori</u> should not deny the plaintiff the opportunity to present that evidence for a jury's determination. <u>Norton</u>, 145 F.3rd at 119; see, <u>Gallagher vs. Delaney</u>, 139 F.3rd 338 (1998).

With respect to Title VII Sex Discrimination cases, where there is no direct evidence of discriminatory conduct, the three-part burden shifting framework of <u>McDonnell Douglas Corp. vs. Green</u>, 411 US 792, 802-04, 93 S.Ct.1817, 36 L.Ed.2d 668 (1973) applies to determine whether summary judgment is appropriate; see also <u>Fischer vs. Vassar College</u>, 114 F.3rd at 1335-36. Under this framework, plaintiff must establish a prima facie case of discrimination by showing that she is a member of a protected class; she is qualified for her position; she suffered an adverse employment action; and the circumstances give rise to an inference of discrimination. See, <u>McDonnell Douglas Corp. vs. Green</u>, 411 US. at 802.

The district court must view the facts in the light most favorable to plaintiff, since she has a **de minimis** burden of proof at the prima facie stage. If plaintiff succeeds in presenting a prima facie case, defendant may rebut by articulating a legitimate, non-discriminatory reason for the employment action; <u>Weinstock</u>, 224 F.3rd at 42; see, <u>Texas Dep't. of Community Affairs vs. Burdine</u>, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once defendant articulates such a non-

discriminatory reason, the presumption drops from the picture and plaintiff must then come forward with evidence that the defendant's proffer of a non-discriminatory reason is a mere pretext for actual discrimination. This evidence must be sufficient to support a rational finding that the non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action. Weinstock, 224 F.3rd at 42; quoting Van Zant vs. KLM Royal Dutch Airlines, 80 F.3rd 708, 714 (2nd Cir. 1996). The question is whether as a whole the evidence supports a sufficient rational inference.

In sum, in order to grant summary judgment not only must there be no genuine issue of material fact, but there must also be no controversy regarding the inferences to be drawn from them. See, Donahue vs. Windsor Locks Bd. of Fire Comm'rs., 834 F.2d 54, 57 (2nd Cir. 1987). In Gallo vs. Prudential Residential Servs., Ltd., Partnership, 22 F.3rd 1219, 1224 (2nd Cir. 1994) the Court of Appeals cautioned that summary judgment is a "drastic provisional remedy" where "intent is at issue".

### III. Plaintiff Has Demonstrated A Sufficient Case of Discrimination Under Both The ADEA And Title VII Entitling Her To Present Her Claims To A Jury.

Plaintiff Cheryl Coudert is a female broker who was born on June 23, 1944 and was 57 years of age when she was terminated by JMS on January 11, 2002.

(Pltf's Aff. par. 1). She held a Series 7 license authorizing her to sell stocks, bonds and mutual funds as well as insurance and variable rate annuities. Plaintiff was qualified for her position as a licensed sales representative with defendant JMS. (Pltf's. Aff. par. 3). Plaintiff suffered adverse employment action including humiliation, embarrassment, denial of resources to do her job, isolation, reduction in pay, a discriminatory transfer from Darien to Fairfield in March 1997, termination on January 11, 2002 and the deliberate filing of a Form U-5 which made it impossible for her to obtain alternative employment in the Securities business. (Pltf. Aff. passim).

Finally, the circumstances giving rise to an inference of discrimination were repeated verbal attacks on her from her manager in the Darien office, a punitive transfer to Fairfield when she complained to the Vice President and CFO of JMS, James Wolitarsky (Pltf's. Aff. par. 10, Ex. 4-5); she was the only female sales representative in the Darien office during her tenure there (Pltf's. Aff. par. 8).

Plaintiff was involuntarily transferred from Darien to Fairfield in March 1997. (Pltf's. Aff. par. 6, 11-14, Ex. 5,6,7). When she arrived in Fairfield, she was placed in the bullpen, denied resources to do her job including computer hardware and a sales assistant, denied the privacy of an office in which she could see clients even when there were offices available to others (Pltf's. Aff. par. 15-16). Plaintiff was threatened

by John Fortuna with the loss of her job because she complained not only to Wolitarsky during 1996 through 1999 (Pltf. Aff. par. 10, 21, 22, 23, Ex. 4) but to Ash Eldredge in 2000 (Ex. 9) who was the new regional manager.

Plaintiff was the recipient of the infliction of extreme emotional distress by John Fortuna, Fairfield branch manager "emeritus" who threatened her employment in 1999 (Pltf's. Aff. par. 21) and deliberate, callous and willful indifference by Richard Avallon, the branch manager. She suffered reduction in her commission structure and as a result of the discriminatory treatment she endured, her production fell. (Pltf's. Aff. par. 14-36, Ex. 1-9).

Defendant goes to great length to establish that plaintiff's production fell during her years in Fairfield. However, from March 1997 through October 1997 plaintiff's production increased dramatically. (Pltf's Aff. par.17). In November 1997 plaintiff is left in the bullpen while the office physically expands. There are three empty offices, and she is denied all three (Pltf's Aff. par. 17).

On December 21, 1998 branch manager Avallon informs plaintiff she will be cut back to 25% payout on all business over her objection. She had requested help in May 1999 and nothing was provided to her and no help was given. (Pltf's Aff. par. 18). At this point there are four empty offices (Pltf's Aff. par. 18).

In June 1999 Avallon asked plaintiff to write a sales plan he would use as a talking paper with his boss, Larry Doyle, in order to get plaintiff's pay out re-established. Plaintiff spent hours writing the sales plan but never heard anything from Avallon or any other manager after her submission (Pltf's Aff. par. 19).

In the summer of 1999 various interns, cold callers and brokers' daughters are working in the office operating out of private offices. Plaintiff remains in the bull pen. (Pltf's Aff. par. 20).

In September 1999 plaintiff was called into a conference room by John Fortuna and was berated for calling Wolitarsky. Fortuna told plaintiff she would be let go soon and lots of lawsuits would result. (Pltf's Aff. par. 21). When plaintiff tried to explain what her needs were, Fortuna stood and left the room abruptly (Pltf's Aff., par. 21). In September 1999 plaintiff called Wolitarsky and complained she was being harassed and threatened, and Wolitarsky said he would take care of it. (Pltf's Aff. par. 22). In October 1999 Wolitarsky visited the Fairfield office where plaintiff was still in the bullpen. (Pltf's. Aff. par. 23).

On November 12, 1999 plaintiff is assigned the smallest office which she is to share with another broker, Jack Henriques (Pltf's Aff. par. 26). There are still four empty offices available (Pltf's Aff. par. 26). In December 1999 Avallon calls plaintiff

9

from Philadelphia where he attends a manager's meeting and directed plaintiff to meet with Larry Doyle the next morning (Pltf.'s Aff. par. 27). Doyle was complaining about the medical bills for plaintiff's husband and tells plaintiff there is a rumor plaintiff is going to sue JMS (Pltf's Aff. par. 27).

From January through March 2000 plaintiff's business is improving with bookings at $62,500 plus. Plaintiff is encouraged because there was a memo sent by JMS that brokers must do that amount, $62,500 by June or there would be a 25% pay cut. Plaintiff's paycheck was still 25% in April and while bringing in an additional $12,500 in business (Pltf's Aff. par. 28).

In May 2000 plaintiffs pay out is still 25%. She went to Avallon and explained she had booked $75,000 plus and needed her salary particularly because of her husband's medical condition and having to hire extra personnel to help (Pltf's Aff. par. 29). Avallon put plaintiff off, because, he stated, there was a new regional manager coming to the company on July 1 and she would have to wait to discuss her salary situation with him. (Pltf's Aff. par. 29).

In July 2000 plaintiff requests Avallon arrange for her to speak with the new regional manager, Ash Eldredge, about increasing plaintiff's pay out (Pltf.'s Aff. par. 30-33). Plaintiff can never get satisfaction, and she is finally terminated on January

11, 2002 when Avallon and Fortuna demand her resignation (Pltf. Aff. par 33). She is humiliated, degraded and embarrassed by Avallon and Fortuna.

Defendants claim that she is being terminated because of her production and performance is the ultimate irony. JMS literally destroyed this woman and her ability to do her job. As she states in her affidavit, they treated plaintiff as an over-the-hill, washed-up, has-been broker and used offices for storage rather than providing plaintiff with a private office in which to do her business. (Pltf's aff. par. 15, ex. 1,pg. 286-87). Ironically, Fortuna told plaintiff Coudert if she got an office, she'd have to be let go. (ex. 1, pg. 289).

Plaintiff's termination was the culmination of all the indignities they subjected her to. (Pltf. Aff. passim). Ms. Coudert expressed in her complaints verbally and in writing from 1995 through 2001, and rather than address the issues raised by plaintiff, defendant retaliated against plaintiff by threatening to fire her and ultimately by doing so on account of her age and her gender. (Pltf's Aff. passim, ex 1, pg. 288).

The evidence as a whole clearly entitles the plaintiff to present her case to the jury. There is sufficient evidence from which a rational inference can be drawn that the adverse employment action taken against plaintiff was the result of intentional age and gender discrimination. In this case where the evidence is that the defendant

deliberately engaged in a continuing and systematic course of conduct that denied plaintiff the ability to do her job, defendant's pretextual proffered performance based explanation is hollow and not worthy of belief. There is clearly a genuine issue of material fact, and there is sufficient evidence from which an inference of discrimination may be drawn by a rational jury.

### IV. Plaintiff's Claims Including the Incidents In the Darien Office Which Commenced in 1995 and 1996 Are Not Barred By The Statute Of Limitations.

Plaintiff has submitted evidence that acts of discrimination committed against her were part of a continuing and systematic effort to discriminate against her on account of her age and sex by denying her the resources to do her job, by humiliating her, by inflicting extreme emotional distress upon her, by verbally abusing her, isolating her, retaliating against her for her thoughtful complaints, and ultimately by terminating her and filing the U-5. It is undisputed that plaintiff was terminated from her employment by JMS on January 11, 2002. On July 3, 2002 she filed a written charge of discrimination with the Equal Employment Opportunity Commission and its designee the Connecticut Commission of Human Rights and Opportunities. (Ex. 11) By letter dated December 17, 2002 CHRO issued a notice giving plaintiff the right to

sue within 90 days of receipt of the notice and plaintiff filed this action within the 90 day period on February 24, 2003.

In this Circuit, district courts may hear claims involving discriminatory acts raised before the EEOC that occurred within 300 days of the date the charge was filed. <u>Minor vs. Cheshire</u>, 126 F.Supp.2d 184, 189 (D.Conn. 2000). See also, 42 U.S.C. §2000e-5(e); <u>Quinn vs. Green Tree Credit Corp.</u>, 159 F.3rd 759, 765 (2nd Cir. 1998). The law is also clear that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitation, is subject to waiver, estoppel, and equitable tolling." <u>Zipes vs. Trans World Airlines, Inc.</u>, 455 U.S. 385 at 393, 102 S.Ct. 1127 (1982). A limitations period may be tolled by offering evidence of a "continuing violation" so long as at least one allegation falls within the appropriate statutory period; see, <u>Delaware State College vs. Ricks</u>, 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). "The continuing violations doctrine extends 'the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitation.'" <u>Minor</u>, 126 F.Supp. 2d at 189; citing <u>Annis vs. County of Westchester</u>, 136 F.3rd 239, 246 (2nd Cir. 1998).

A continuing violation can be established by showing either that the incidents of discrimination against plaintiff constitute a series of related acts or that defendant's actions were taken pursuant to the maintenance of a discriminatory system, <u>Minor</u>, 126 F.Supp.2d at 190. Acts are related when the acts complained of are not completed, distinct occurrences, <u>id</u>, 126 F.Supp.2d at 190. These acts against Coudert were clearly related and were never completed or distinct occurrences. For example, in both Darien and Fairfield, Engelskirger and Fortuna respectively managers in Darien and Fairfield berated and threatened to fire plaintiff because she dared to complain about being relegated to the bullpen and being denied the resources to do her job. The punitive transfer in March 1997 was a direct result of her complaints to CFO Wolitarsky in July 1996 about the conditions of her employment. She was relegated to the bullpen in both Darien and Fairfield and denied a private office even when offices were available but used for storage of inanimate objects. When plaintiff complained, it was either Engelskirger or Fortuna who expressly and aggressively threatened to fire her when she complained. It was Fortuna in 1999 and Engelskirger in 1995. (Pltf's Aff. par. 4-9, 21-22, passim). They threatened to fire her if she had the temerity to complain about her circumstances. This was a continuing and systematic process to degrade, humiliate and break the spirit of an older woman

who management perceived as vulnerable and who should be driven from her employment with JMS because of her age and gender.

Plaintiff's affidavit as well as her complaint are replete with the discriminatory acts by management against her. These discriminatory acts had the cumulative effect of breaking her so that she could not perform and then punishing her because the very actions perpetrated upon her by management had the effect of reducing her productivity. This was a concerted effort by management to drive Cheryl Coudert from her employment. Defendant JMS destroyed plaintiff's ability to produce and then fired her for the failure to produce and generate business that was directly caused by JMS's discriminatory treatment of her.

All claims beginning in 1995 are not time-barred and defendants should be estopped from claiming that they are. The doctrine of "continuing violation" permits plaintiff to prove all acts of discrimination commencing in 1995 through the date of her termination on January 2, 2002 and the filing of the U-5 which has effectively destroyed her ability to gain alternative employment in the securities industry. Defendant's acts of discrimination and retaliation were continuing, systematic and retaliatory.

For all these reasons, defendant's motion for summary judgment should be denied.

                        THE PLAINTIFF,
                        CHERYL COUDERT


                        BY_____
                          ANDREW B. BOWMAN, ct00122
                          1804 Post Road East
                          Westport, CT 06880
                          (203) 259-0599
                          (203) 255-2570 (Fax)
                          e-mail: andrew.bowman@snet.net

### **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was mailed, postage prepaid on this ____ day of December, 2004 to:

John G. Stretton, Esq.
Edwards & Angell, LLC
Three Stamford Plaza
301 Tresser Blvd.
Stamford, CT 06901


                        _____
                        ANDREW B. BOWMAN