UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHERYL COUDERT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Docket No. 303 CV 0324 (MRK) |
| | : | |
| JANNEY MONTGOMERY SCOTT LLC, | : | |
| | : | |
| Defendant. | : | JANUARY 24, 2005 |

**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Janney Montgomery Scott LLC ("JMS") hereby submits this reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment. In her Opposition, Plaintiff not only fails to demonstrate that JMS's nondiscriminatory reason for terminating Plaintiff was pretextual, her "evidence" of intentional discrimination is nothing more than unsubstantiated speculation. Summary Judgment should enter in favor of JMS on all claims advanced by Plaintiff's Complaint dated February 24, 2003.

**I.   THE VAST MAJORITY OF THE ALLEGED DISCRIMINATORY ACTS IDENTIFIED BY PLAINTIFF ARE TIME BARRED**

District courts may only hear claims involving discriminatory acts that were first "raised before the EEOC and that occurred within 300 days of the date the EEOC charge was filed." *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 189 (D.Conn. 2000); *see also* 29 U.S.C. 626(d); 42 U.S.C. 2000e-5(e). September 7, 2001 is the three hundredth day preceding July 3, 2002, the date Plaintiff filed her written charge of discrimination with the EEOC. Any claim of alleged discriminatory conduct that precedes the date of September 7, 2001 is time barred and may not be used to support a claim of discrimination. *Id.; see also* Ruling and Order dated October 7, 2004, *Coudert v. Janney Montgomery Scott LLC*, Case No. 3:03cv324 (MRK).

1

The continuing violation exception is a highly disfavored concept in this circuit and is only recognized when the case involves an ongoing discriminatory policy or practice. <u>Miner v. Town of Cheshire</u>, *126 F. Supp. 2d at 189-190*. "A continuing violation . . . may not be based on the continuing effects of an earlier discrimination or on a completed act of discrimination." *Id. at 191*. ". . . [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory acts starts a new clock for filing charges . . . ." <u>National R.R. Passenger Corp. v. Morgan</u>, *536 U.S. 101, 113 (2002)*; <u>Elmenayer v. AFF Freight System, Inc.</u>, *318 F.3d 130, 134 (2d. Cir. 2003)*; <u>Lambert v. Genesee Hospital</u>, *10 F.3d 46, 53 (2d. Cir. 1993)* *(". . . multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation")*; <u>Miner v. Town of Cheshire</u>, *126 F. Supp. 2d at 190* *("discrete incidents or even similar multiple incidents of discrimination that do not result from discriminatory policies or mechanisms, however, do not amount to a continuing violation")*. The mere existence of "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." <u>National R.R. Passenger Corp. v. Morgan</u>, *536 U.S. at 112*.

With the exception of her termination, which occurred in January of 2002, every other alleged discriminatory act identified by Plaintiff predates the time bar dated of September 7, 2001. <u>See</u> *Counter Affidavit of Plaintiff Cheryl Coudert; Memorandum in Opposition at 12-15*. Moreover, the events relied on by Plaintiff, such as a refusal to grant a request for an office, a refusal to grant a request for a sales aide, an alleged punitive office transfer, and a threatened termination by Engelskirger in 1995 and threatened termination by Fortuna in 1999[1], are all

---

[1] Plaintiff acknowledges that Fortuna served as her supervisor for only one month after she transferred to the Fairfield office in March of 1997. *Deposition of Plaintiff at 137-138, 204-205*. Thus, when Fortuna allegedly made this termination threat in 1999, he was not Plaintiff's supervisor and did not hold a position of authority over Plaintiff.

2

examples of discrete acts incapable of supporting her claim of intentional discrimination because each act predates the time-bar date of September 7, 2001. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 114-115 *(identifying as discrete acts events such as a termination, failure to promote, denial of transfer, refusal to hire, denial of training, and disciplinary matters)*; *Elmenayer v. AFF Freight System, Inc.*, 318 F.3d at 134-135.

Plaintiff cannot transform discrete acts into an ongoing discriminatory policy or practice merely by stating, as Plaintiff has done, that the discrete acts are related. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 113 *(. . . discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges")*; *see also Miner v. Town of Cheshire*, 126 F. Supp. 2d at 192 *("a conclusory allegation of a continuing violation will not suffice")*. Only when the evidence demonstrates a pattern of harassing behavior so continuous and so repeated will a discriminatory policy or practice capable of supporting the continuing violation exception be found to exist. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 n.4 (2d Cir. 2001); *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001); *Miner v. Town of Cheshire*, 126 F. Supp. 2d at 190 citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996) *(examples of continuing violations pursuant to a broad discriminatory system include use of discriminatory seniority lists or employment tests)*; *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993). In this case, Plaintiff's attempt to link the alleged discriminatory treatment she received while supervised by Engelskirger in the Darien office to her complaints about seating assignments and reduced commission payouts while supervised by Avallon in the Fairfield office is unsupported by the record. See also Memorandum of Law in Opposition to Plaintiff's Request for Additional Discvoery (pleading # 38); *Ruling and Order dated October 7, 2004, Coudert v. Janney Montgomery Scott LLC, Case No. 3:03cv324 (MRK)*. This transfer, a transfer which

Plaintiff acknowledges resulted in a vastly improved working environment under a new supervisor[2], breaks the continuum necessary to demonstrate the pattern of harassing behavior required to support a continuing violation theory. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 n.4 (2d Cir. 2001) *(rejecting a claim of a continuing violation where there was no indication that the two alleged harassers acted in concert or that their behavior was related in any way other than being similarly offensive)*. Plaintiff's reliance on a continuing violation theory should be rejected in its entirety.

## II.   PLAINTIFF HAS PRESENTED NO EVIDENCE OF PRETEXT

To survive summary judgment, Plaintiff must not only present evidence that her age or sex played a motivating force in the adverse employment action at issue, but also that JMS's legitimate, non-discriminatory reason for terminating Plaintiff's employment, her poor performance, is unworthy of credence. *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000); *Vallone v. Lori's Natural Food Center, Inc.*, 1999 U.S. App. LEXIS 26455 at *3 (2d Cir. 1999); *Van Dine v. Robert Bosch Corp.*, 62 F.Supp.2d 644, 647 (D.Conn. 1999); *Dobrich v. General Dynamics Corp.*, 40 F.Supp.2d. 90, 102 (D.Conn. 1999); *Ferrand v. Credit Lyonnais*, 2003 U.S. Dist. Lexis 17202 at *23-24 (S.D.N.Y. 2003). Plaintiff does not dispute that she ranked as the lowest gross producer in the Fairfield office in 1997, 1998, 1999, 2000, and 2001. *See Plaintiff's Local Rule 56(a)(2) Statement*, ¶¶ 5-14. Plaintiff also does not dispute that her gross production in 2001 was so low that her commission payments could no longer satisfy her monetary contribution to her medical insurance coverage plan. *Id.*, ¶ 17; *Counter Affidavit of*

---

[2] *Deposition of Plaintiff at 63 ("Q. Did the office environment improve when you went to Fairfield? A. Yes. For a while"), at 266-267 (testifying that between March of 1997, when she arrived in Fairfield, and November of 1997, when the Fairfield office expanded, Plaintiff felt like she "was being treated like everybody else"), 133-136, 142-143; see also Facsimile dated January 5, 1998 from R. Coudert (Exhibit L) (wherein Plaintiff's husband writes that Plaintiff's "work environment and employment conditions have improved dramatically"). It is also undisputed that once Plaintiff transferred, Engelskirger no longer had any supervisory authority over Plaintiff or influence over her employment status. Plaintiff's Local Rule 56(a)(2) Statement, #3 (Admitted); Deposition of J. Engelskirger at 72 (Exhibit D); Deposition of R. Avallon at 29, 32 (Exhibit J); Affidavit of R. Avallon, ¶ 4 (Exhibit K).*

4

*Plaintiff Cheryl Coudert*, ¶ *32 (acknowledging her lack of effort to improve upon her gross production in 2001)*. Plaintiff offers no evidence that JMS's legitimate, non-discriminatory reason for terminating Plaintiff's employment is unworthy of credence. Summary judgment should enter in favor of JMS on both Plaintiff's sex and age discrimination claims.

### III. PLAINTIFF OFFERS NO EVIDENCE OF INTENTIONAL DISCRIMINATION

At the summary judgment stage, Plaintiff must also present evidence from which a reasonable fact finder could determine that discrimination was the real reason for the discharge. *Van Dine v. Robert Bosch Corp.*, 62 F.Supp.2d at 647; *Weinstock v. Columbia University*, 224 F.3d at 42; *Vallone v. Lori's Natural Food Center, Inc.*, 1999 U.S. App. LEXIS 26455 at *3; *Dobrich v. General Dynamics Corp.*, 40 F.Supp.2d at 102; *Ferrand v. Credit Lyonnais*, 2003 U.S. Dist. Lexis 17202 at *23-24; *Soderberg v. Gunther Int'l, Ltd.*, 2004 U.S. Dist. LEXIS 57380 at *5 (D. Conn. 2004). As one court has described the evidentiary burden facing a plaintiff opposing summary judgment, it is the time when a plaintiff must "put up or shut up." *Weinstock v. Columbia University*, 224 F.3d at 41 citing Fleming James, Jr. & Geoffrey C. Hazard, Jr., *Civil Procedure* 150 (2d ed. 1977). Plaintiff has failed to satisfy her evidentiary burden.

#### A. Plaintiff's Sex Discrimination Claim Lacks Any Evidentiary Support.

To advance a viable claim of sex discrimination, Plaintiff must do more than allege that she was the only female sales representative in the Darien office. *Grey v. City of Norwalk Board of Education*, 2004 U.S. Dist. LEXIS 6703 at 20-21 (D.Conn. 2004) (more than a difference in gender is required to raise a triable issue of fact regarding discriminatory motivation); *Ferrand v. Credit Lyonnais*, 2003 U.S. Dist. LEXIS 17202 at *30 ("... proof the sexism 'caused the decision' is necessary for a finding a pretext"); see also *Newsom-Lang v. Warren Int'l, Inc.*, 80 Fed. Appx. at 126; *Dobrich v. General Dynamics Corp.*, 40 F. Supp. 2d at 102. Not only is this

5

evidence insufficient, it is time barred. <u>Miner v. Town of Cheshire</u>, 126 F. Supp. 2d at 189; <u>see also</u> 29 U.S.C. 626(d); 42 U.S.C. 2000e-5(e). However, this is the only evidence Plaintiff submits in support of her sex discrimination claim. Moreover, this evidence, which concerns only her time in the Darien office, is time barred. <u>See</u> *Plaintiff's Local Rule 56(a)(2) Statement, ¶ 2 (wherein Plaintiff acknowledges she transferred from the Darien office to the Fairfield office in March of 1997, which is well before the time-bar date of September 7, 2001).*

While Plaintiff may have been the only female sales representative employed in the Darien office during her tenure in the Darien office, she was not the only female sales representative in the Fairfield office. *Supplemental Affidavit of Richard Avallon, ¶ 3 (attached as Exhibit BB);* <u>see also</u> *1997 and 1998 Rep Ranking (Exhibit N); 1999 Rep Ranking (Exhibit O); 2000 and 2001 Rep Ranking (Exhibit P).* Between 1997 through January of 2002, when Plaintiff was terminated, three females, namely Carolyn Frzop, Joann Attwood Nemis and Anita Andrews, were also employed in the Fairfield office. <u>Id</u>. As reflected in the table below, each achieved gross production numbers far in excess of Plaintiff's gross production numbers.

| YEAR | PLAINTIFF'S GROSS PRODUCTION | MS. FRZOP'S GROSS PRODUCTION | MS. NEMIS'S GROSS PRODUCTION | MS. ANDREW'S GROSS PRODUCTION |
|---|---|---|---|---|
| 1997 | $129,227.40[3] | $225,515.00 | $157,512.67 | |
| 1998 | $88,453.41 | $218,386.46 | $149,468.33 | |
| 1999 | $56,297.66 | $286,557.38 | $207,753.52 | |
| 2000 | $113,831.54 | $213,828.16 | $216,437.03 | $333,097.80 |
| 2001 | $29,183.50 | $180,113.30 | $140,035.43 | $325,850.73 |

---

[3] Plaintiff's 1997 gross production includes her 1997 Fairfield gross production, $106,712.17, and her 1997 Darien gross production, $29,515.23. *1997 and 1998 Rep Ranking (Exhibit N); 1997 Rep Ranking for Darien (Exhibit W).*

6

*1997 and 1998 Rep Ranking (Exhibit N); 1999 Rep Ranking (Exhibit O); 2000 and 2001 Rep Ranking (Exhibit P)*. Moreover, notwithstanding their gender, each received an office and a sales assistant and, to date, remain employed by JMS. *Supplemental Affidavit of Richard Avallon,* ¶¶ *3-5 (attached as Exhibit BB);* see also Guglietta v. Meredith Corp., 301 F. Supp. 2d 209, 216 (D.Conn. 2004) *(rejecting a sex discrimination claim on the grounds that the other similarly situated employee was also a female, a circumstance "inapposite to a viable claim of gender discrimination");* McCulley v. Southern Connecticut Newspapers, Inc., *98 F. Supp. 2d 216, 223 fn 4 (D.Conn. 2000);* Clark v. New York State Electric & Gas Corp., *67 F. Supp. 2d 63, 73 (N.D.N.Y. 1999);* O'Neill-Marino v. Omni Hotels Management Corp., *2001 WL 210360 at \*7 (S.D.N.Y. 2001)*. Plaintiff's inability to adduce any evidence of sex discrimination other than a statement that she was the only female sales representative in the Darien office, especially given the overwhelming evidence demonstrating that age and sex played no role in the employment actions affecting JMS sales representatives, is fatal to her claim of sex discrimination. Summary judgment should enter in favor of JMS on Plaintiff's sex discrimination claim.

**B.    Plaintiff's Age Discrimination Claim Lacks Any Evidentiary Support.**

Unable to produce any evidence of age discrimination, Plaintiff attempts to create a claim by recounting incidents of alleged mistreatment occurring during her employment at JMS and suggesting to the Court that it, without any evidence of intentional discrimination, should now conclude that such mistreatment must have been motivated by intentional discrimination. Grillo v. New York City Transit, *291 F.3d 231, 235 (2d. Cir. 2002) (it is insufficient to merely cite to "alleged mistreatment and ask the court to conclude that it must have been related to [age or sex]");* Grady v. Affiliated Central, Inc., *130 F.3d 553, 561 (2d. Cir. 1997) (where the plaintiff is unable to point to any derogatory statements regarding her age, a belief that a*

*supervisor had a preference for younger workers was deemed to be pure speculation); see also Weinstock v. Columbia University, 224 F.3d at 41; Grady v. Affiliated Central, Inc., 130 F.3d at 561; Soderberg v. Gunther Int'l, Ltd., 2004 U.S. Dist. LEXIS 57380 at \*5; Baldassario v. Security Services of Connecticut, Inc., 2004 U.S. Dist. LEXIS 11395 at \*8-9 (to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor and may not rely on conclusory allegations and unsubstantiated speculation).* The lack of evidentiary support for Plaintiff's claim of age discrimination is evident from Plaintiff's inability to demonstrate that similarly situated employees were treated differently and her failure to challenge Defendant's evidence to the contrary. *Shumway v. United Parcel Service, 118 F.3d 60, 64 (2d. Cir. 1997) (a basic fundamental evidentiary requirement for any discrimination case is evidence that similarly situated employees were treated differently).*

Finally, the main support for Plaintiff's age discrimination claim appears to be her statement that she felt as though she was treated like ". . . an over-the-hill, washed up, has been broker . . . ." *Memorandum in Opposition at 11.* While this statement, unsupported by specific examples of intentional discrimination, amounts to nothing more than unsubstantiated speculation when used to support her age discrimination claim, it does reflect an implicit acknowledgement by Plaintiff that her termination was not due to her age or sex, but rather, was due to the fact that her gross production numbers were no longer satisfactory and were no longer commensurate with the gross production numbers she was once recognized as capable of achieving. *Tutko v. James River Paper Co., Inc., 1999 U.S. App. LEXIS 28455 at \*4 quoting Norton v. Sam's Club, 145 F.3d at 120 ("the ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account*

8

*of their age");* <u>James v. New York Racing Association</u>, *233 F.3d at 154-155 (an employer does not violate Title VII if it takes adverse action against an employee in a protected class for a reason that is not premised on the employee's race, color, religion, sex or national origin).* This statement, coupled with Plaintiff's acknowledgement that her production numbers were the worst in the Fairfield office each and every year from 1997 through 2002 and her inability to produce any direct or circumstantial evidence of discrimination, strongly suggests that discrimination played no role in the decision to terminate Plaintiff. Summary judgment should also enter in favor of JMS on Plaintiff's sex discrimination claim.

## IV. CONCLUSION

As set forth in Defendant's Motion for Summary Judgment and accompanying Memorandum of Law, the decision to terminate Plaintiff was not motivated by either Plaintiff's age or her sex, but was based strictly on her poor performance. In her opposition, Plaintiff does not dispute that she was a poor performer and does not offer anything more than unsubstantiated speculation in support of her age and sex discrimination claims. Summary judgment should enter in favor of Defendant Janney Montgomery Scott LLC on all counts of Plaintiff's Complaint.

RESPECTFULLY SUBMITTED

DEFENDANT,
JANNEY MONTGOMERY SCOTT LLC
BY ITS ATTORNEYS

_____
Marc L. Zaken (CT 03110)
mzaken@edwardsangell.com
John G. Stretton (CT 19902)
jstretton@edwardsangell.com
EDWARDS & ANGELL, LLP
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901
(203) 353-6819

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT was mailed via first class mail, postage prepaid to counsel for the Plaintiff, addressed as follows:

> Andrew B. Bowman, Esquire
> 1804 Post Road East
> Westport, CT 06880

this 24TH day of January, 2005.

_____
John G. Stretton

# EXHIBIT BB

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHERYL COUDERT, | : |
| Plaintiff, | : |
| v. | : Docket No. 303 CV 0324 (MRK) |
| JANNEY MONTGOMERY SCOTT, LLC, | : |
| Defendant. | : |

### SUPPLEMENTAL AFFIDAVIT OF RICHARD AVALLON

The undersigned, being duly sworn, does hereby depose and state:

1. I am over the age of eighteen (18) years, and I understand and believe in the obligation of an oath.

2. The statements set forth in this affidavit are based on personal knowledge. This affidavit is intended to supplement the affidavit I previously executed on November 10, 2004 and which was used by Janney Montgomery Scott LLC to support its Motion for Summary Judgment.

3. Between 1997 through January of 2002, the Fairfield office of Janney Montgomery Scott LLC employed as many as four female sales representatives. The four female sales representatives were Cheryl Coudert, Carolyn Frzop, Joann Attwood Nemis and Anita Andrews.

4. To date, Carolyn Frzop, Joann Attwood Nemis and Anita Andrews continue to be employed by Janney Montgomery Scott LLC as sales representatives.

5. The gross production numbers of each of these three female sales representatives have warranted the use of an office and a sales assistant and, as such, each were provided the use of an office and a sales assistant.

6. The gross production numbers of these three female sales representatives are reflected in Exhibit N (the 1997 and 1998 Sales Representative Ranking), Exhibit O (the 1999 Sales Representative Ranking), and Exhibit P (the 2000 and 2001 Sales Representative Ranking) to Defendant Janney Montgomery Scott LLC's Memorandum of Law in Support of Motion for Summary Judgment.

AFFIANT

_____
RICHARD AVALLON

Sworn and subscribed to before me this 25th day of January 2005.

_____
Notary Public
My Commission Expires

2/28/2010