FORM 1

## UNITED STATES DISTRICT COURT

### DISTRICT OF CONNECTICUT

FILED

2005 JUL 29  A 11: 23

U.S. DISTRICT COURT
BRIDGEPORT, CONN

Cheryl Coudert
_____

v.

Janney Montgomery Scott, LLC

CIVIL CASE NO.   3:03CV324(MRK)

## NOTICE OF APPEAL

1. Pursuant to F. R. A. P. 4(a)(1), __Cheryl Coudert__ hereby gives notice and
                                      (appealing party)

appeals to the United States Court of Appeals for the Second Circuit from the following

Judgment or Order (attach the Judgment or Order):

_Memorandum of Decision Granting Defendant's Motion for_

_Summary Judgment entered July 1, 2005_

2. The Judgment /Order in this action was entered on __July 12, 2005__ .
                                                         (date)

_[signature]_
Signature

Andrew B. Bowman
_____
Print Name

1804 Post Road East

Westport, CT 06880
_____
Address

203/259-0599  Fax: 203/255-2570
_____
Telephone Number

andrew.bowman@snet.net

Date: __7/28/05__

Note: You may use this form to take an appeal provided that it is received by the Office of the Clerk of the U.S. District Court within 30 days of the date on which the judgment was entered (60 days if the United States or an officer or agency of the United States is a party).

## CERTIFICATE OF SERVICE

     This is to certify that a copy of the foregoing was mailed, postage prepaid on this 28 day of July, 2005 to:

John G. Stretton, Esq.
Edwards & Angell, LLC
Three Stamford Plaza
301 Tresser Blvd.
Stamford, CT 06901

ANDREW B. BOWMAN

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHERYL COUDERT,            :
                           :
                Plaintiff, :        NO.   3:03cv324 (MRK)
                           :
v.                         :
                           :
JANNEY MONTGOMERY SCOTT, LLC, :
                           :
                Defendant. :

## JUDGMENT

This matter came on for consideration on defendant's Motion for Summary Judgment before the Honorable Mark R. Kravitz, United States District Judge.

The Court has reviewed all of the papers filed in conjunction with the motion and on July 1, 2005, entered a Memorandum of Decision on the defendant's Motion for Summary Judgment granting the relief.

It is therefore ORDERED and ADJUDGED that judgment is entered for the defendant and the case is closed.

Dated at New Haven, Connecticut, this 12th July, 2005.

KEVIN F. ROWE, CLERK

By

Kenneth R. Ghilardi
Deputy Clerk

EOD: 7/12/05

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHERYL COUDERT,                           :

                              Plaintiff,  :        NO.    3:03cv324 (MRK)

v.                                        :

JANNEY MONTGOMERY SCOTT, LLC,  :

                              Defendant.  :

## MEMORANDUM OF DECISION

In this case, Plaintiff Cheryl Coudert alleges that she was discriminated against on

account of her age and gender by her employer, Defendant Janney Montgomery Scott, LLC.

Count One of Ms. Coudert's Complaint [doc. #1] asserts claims under the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; Count Two brings claims under Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Presently before the Court is

Defendant's Motion for Summary Judgment [doc. #39] on all of Plaintiff's claims. One of the

challenges the Court faces is that much of this case concerns relatively old acts of alleged

discrimination, which, lamentably, Ms. Coudert should have pursued sooner than she did. For

the reasons stated below, Defendant's Motion for Summary Judgment [doc. #39] is GRANTED.

### I.

The summary judgment standard is a familiar one. Summary judgment is appropriate

only when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A

genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving

1

party," and facts are material to the outcome if the substantive law renders them so. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court must draw all ambiguities and inferences in favor of Plaintiff. *See Andersen*, 477 U.S. at 255. However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Andersen*, 477 U.S. at 249-50.

## II.

Before addressing Defendant's motion for summary judgement and the merits of Ms. Coudert's claims, the Court must first resolve an issue that the Court raised, *sua sponte*, during oral argument on the pending motion. In her Complaint, Ms. Coudert primarily styled her ADEA and Title VII claims as "disparate treatment" and "retaliation" claims. *See* Compl. [doc. #1] at 3, 7. Because the Title VII portion Ms. Coudert's Complaint mentioned the phrase "hostile work environment," the Court at oral argument asked counsel for Ms. Coudert whether she also claimed that Defendant created a hostile work environment in violation of either Title VII or the ADEA, or both. *See* Compl. [doc. #1] at 10, ¶ 18. Counsel for Ms. Coudert indicated that she had alleged hostile work environment claims under both Title VII and the ADEA, while counsel for Defendant stated that throughout the discovery process and briefing for summary

2

judgment, neither party had ever characterized this case as including hostile work environment

claims under either Title VII or the ADEA.  Because neither party had addressed a possible

hostile work environment claim in the summary judgment papers, the Court allowed

supplemental briefing. Having received supplemental briefs from both parties, the Court notes,

to its dismay, that neither party addressed whether a hostile work environment claim – under

Title VII or the ADEA, or both – was properly pleaded in the Complaint and whether granting

Ms. Coudert leave to amend the Complaint to raise any such claim at this late stage of the

proceedings would be appropriate.[1]

The Title VII portion of Ms. Coudert's Complaint clearly contained a short and plain

statement that Defendant "did commit these acts of discrimination and retaliation against

plaintiff on account of her gender and did create and maintain a *hostile work environment* for

plaintiff because of her gender by engaging in the behavior set forth herein." Compl. [doc. #1] at

10, ¶ 18 (emphasis added); *see also* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and

plain statement of the claim showing that the pleader is entitled to relief"); *Swierkiewicz v.*

*Sorema N.A.*, 534 U.S. 506, 512 (2002) (short and plain statement of the claim must simply

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests.") (internal quotations omitted); *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust*

*Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) ("[A] complaint is judged by the liberal system of

---

[1] Ms. Coudert's supplemental brief [doc. #59] apparently assumes that she had properly
pleaded hostile work environment claims under both Title VII and the ADEA, and proceeds to
provide factual support and legal argument in favor of the merits of her alleged hostile work
environment claims.  Defendant's supplemental brief [doc. #60] similarly skips over the pleading
issue, assumes that Ms. Coudert brought only a sex-based hostile work environment claim under
Title VII, and then proceeds to provide factual support and legal argument against any such
claim.

3

'notice pleading' set up by the Federal Rules.") (internal quotations and citations omitted);

*Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) ("Rule 8 pleading is extremely

permissive.").  Defendant was thus given fair notice of Ms. Coudert's Title VII hostile work

environment claim, and Ms. Coudert should not be penalized for Defendant's failure to address

this claim during discovery and in its motion for summary judgment.  Therefore, Ms. Coudert's

hostile work environment claim under Title VII is properly before the Court.

In contrast, there is no similar short and plain statement alleging a hostile work

environment based on Ms. Coudert's age under the ADEA.  *See generally* Compl. [doc. #1] at 3-

6.  Nor has Ms. Coudert formally sought to amend her complaint to assert such a claim.

Nevertheless, the Court construes the colloquy between the parties at oral argument and Ms.

Coudert's supplemental brief [doc. #59] as an oral motion to amend her Complaint to assert her

hostile work environment claim under the ADEA.

It is certainly true that permission to amend a complaint is generally freely granted.  *See*

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, amendment of a complaint to raise new

claims in response to a motion for summary judgment is generally disfavored, due to the

potential prejudice to the opposing party.  Claims that are entirely new – that is, claims based

new facts and new legal theories with no relation to the previously pled claims – are commonly

rejected at the summary judgment stage due to the prejudice to the defendant, who may not have

had fair notice of the claim and consequently may not have had an adequate opportunity for

discovery.  *See, e.g., Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.

1985) ("[A] proposed amendment . . . [is] especially prejudicial . . . [when] discovery had

already been completed and [non-movant] had already filed a motion for summary judgment.")

(internal quotation marks and citation omitted), *quoted in Krumme v. WestPoint Stevens Inc.*,

4

143 F.3d 71, 88 (2d Cir. 1998); *Stiller v. Colangelo*, 221 F.R.D. 316, 317 (D. Conn. 2004)

("[A]fter discovery has been completed and the defendant has filed a motion for summary

judgment, allowing a party to amend his pleading can be prejudicial. [Plaintiff's] proposed

amended complaint adds claims different in character and purpose from those articulated in the

initial complaint. It alleges new facts that will require additional discovery, prompting both

prejudice to [defendant] and undue delay in the resolution of the case.") (citing *Ansam Assocs.*,

760 F.2d at 446).

That said, claims that are related to or are mere variations of previously pleaded claims –

that is, claims based on the same nucleus of operative facts and similar legal theories as the

original claims – may be raised on a motion for summary judgment where the defendant was

clearly on notice from the complaint and was not unfairly prejudiced. *See, e.g., Hanlin v.*

*Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986) ("Here, the new claims are merely variations on

the original theme of malpractice, arising from the same set of operative facts as the original

complaint. Moreover, both the contract and negligence theories set forth in the proposed

amended complaint were forecast by the original malpractice allegations."); *Purdy v. Town of*

*Greenburgh*, 166 F. Supp. 2d 850, 859-60 (S.D.N.Y. 2001) ("[T]he claim plaintiff seeks to add

arises from the same set of facts as the claims asserted in the original Complaint and is based

upon the same theory of liability. . . . Because plaintiff's original claim clearly asserts a claim

premised on age discrimination under § 1983, defendants will not be unfairly prejudiced by the

addition of an ADEA claim.").

In this case, Ms. Coudert's ADEA and Title VII claims all stem from the same nucleus of

operative facts – the various incidents of alleged discrimination that were pled in her Complaint.

These discrete incidents of alleged discrimination were presumably the focus of the parties'

5

discovery. The question is whether Defendant would be unduly prejudiced if her ADEA hostile

work environment claim were considered by the Court at this late stage. Though a close call, the

Court will consider Ms. Coudert's hostile work environment claim under the ADEA, as well as

Title VII, in part because Defendant has not asserted that it would be unfairly prejudiced by

considering this claim; nor has Defendant indicated whether any additional discovery would be

needed to defend a hostile work environment claim under the ADEA. *Cf. Conley v. Gibson*, 355

U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in

which one misstep by counsel may be decisive to the outcome and accept the principle that the

purpose of pleading is to facilitate a proper decision on the merits."), *cited in Swierkiewicz*, 534

U.S. at 514; *DiPaolo Mach. Works, Ltd. v. Prestige Equip. Corp.*, 998 F. Supp. 229, 234

(E.D.N.Y. 1998) ("Inartistic pleadings that do not specify the claim, but which nevertheless

make out a cause of action under a plausible legal theory, are acceptable."); 5 Charles Alan

Wright, et al., *Federal Practice & Procedure: Civil 3d* § 1216, at 220-27 (3d ed. 2004) ("[T]he

complaint must contain either direct allegations on every material point necessary to sustain a

recovery on any recognizable legal theory, even though that theory may not be the one suggested

or intended by the pleader, or the pleading must contain allegations from which an inference

fairly may be drawn by the district court that evidence on these material points will be available

and introduced at trial."). As a leading commentator has rightly stated, "[o]ne of the most

important objectives of the federal rules is that lawsuits should be determined on their merits and

according to the dictates of justice, rather than in terms of whether or not the averments in the

paper pleadings have been artfully or inartfully drawn." *Id.* at § 1286, at 747.

Thus, for the sake of clarity, the Court recites that the claims presently before it are Ms.

Coudert's disparate treatment and retaliation claims under the ADEA and Title VII, *and* Ms.

6

Coudert's hostile work environment claims under both the ADEA and Title VII.

## III.

While there may be some dispute about what claims are properly before the Court, the basic facts of this case are not in serious dispute. Ms. Coudert alleges discriminatory treatment at the hands of different managers and supervisors of Defendant, at its Darien and Fairfield, Connecticut offices. These acts allegedly occurred over a period of time from February 1995 until January 2002, when Ms. Coudert was terminated by Defendant. Specifically, and as clarified at oral argument, Ms. Coudert claims that on account of her age and gender she was: (1) subjected to harsh treatment at the hands of her supervisor at Defendant's Darien office – Mr. Jack Engelskirger – from February 1995 to December 1996; (2) transferred from the Darien to the Fairfield office in early 1997; (3) denied the assistance of a sales aide at the Fairfield office from March 1997 to March 1999; (4) denied a private office at the Fairfield office from March 1997 until November 1999; (5) verbally berated by a branch manger "emeritus" at the Fairfield office, Mr. John Fortuna, in September 1999; (6) paid a reduced commission rate while working at the Fairfield office from 1998 until her termination in January 2002; and (7) terminated on January 11, 2002. *See* Pl.'s Mem. in Opp'n to Summ. J. [doc. #47] at 7-12; *see also* Counter Affidavit of Cheryl Coudert [doc. #49] at ¶¶ 4-26.

Generally speaking, Defendant does not dispute the occurrence of these events, though it vehemently disputes Ms. Coudert's allegation that unlawful age and/or sex discrimination was the root cause of them. Defendant argues instead that Ms. Coudert's poor work performance was the reason for most of the alleged adverse treatment that forms the basis of her claims. Def.'s Mem. in Support of Summ. J. [doc. #40] at 1-2. The parties do not dispute that Ms. Coudert was the lowest-performing securities broker in the Defendant's Fairfield office from 1997 through

7

2001. *See* Def.'s Local Rule 56(a)(1) Statement [doc. #42] at ¶¶ 5, 7, 9, 11, 13; Pl.'s Local Rule

56(a)(2) Statement [doc. #48] at ¶¶ 5, 7, 9, 11, 13. Furthermore, the parties do not dispute that

beginning in 1997, Defendant implemented a company-wide minimum production level of

$125,000 for all brokers in the New England Region registered more than three years, and that

failure to meet this target would result in a reduced commission rate. *See* Def.'s Local Rule

56(a)(1) Statement [doc. #42] at ¶ 15; Pl.'s Local Rule 56(a)(2) Statement [doc. #48] at ¶ 15; *see*

*also* Def.'s Exs. in Support of Mot. for Summ. J. [doc. #41] at Exs. Q, R, S (memoranda

outlining the reduced commission rate policy). Both parties also agree that Ms. Coudert failed to

meet the minimum production level in 1998, 1999, 2000, and 2001, and thus was subject to a

reduced commission rate under the company-wide minimum production policy. *See* Def.'s Local

Rule 56(a)(1) Statement [doc. #42] at ¶ 16; Pl.'s Local Rule 56(a)(2) Statement [doc. #48] at ¶

16.

**IV.**

Before this Court can address the merits of Ms. Coudert's claims, the Court must first

determine which of the alleged discriminatory acts over a seven year time frame – if any – are

properly before the Court.

**A.**

Turning first to the timeliness of Ms. Coudert's disparate treatment and retaliation claims,

as a general rule, "[t]o sustain a claim for unlawful discrimination under Title VII and/or the

ADEA, a plaintiff must file administrative charges with the EEOC within 300 days of the alleged

discriminatory acts." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n.1 (2d Cir. 2000); *see*

*also* 42 U.S.C. § 2000e-5(e)(1) (establishing 300-day time bar for Title VII claims); 29 U.S.C. §

626(d)(2) (same for the ADEA). In this case, it is undisputed that Ms. Coudert filed her charge

8

with the EEOC on July 3, 2002. All parties agree that the three hundredth day preceding July 3,

2002 is September 7, 2001. As clarified at oral argument, only two of the alleged discriminatory

acts occurred after September 7, 2001 – the termination of Ms. Coudert on January 11, 2002, and

Ms. Coudert's receipt of a reduced commission rate from September 7, 2001 until her

termination on January 11, 2002. Thus, all the other alleged discriminatory acts, standing alone,

would be time-barred. Nonetheless, Ms. Coudert argues that because her termination and her

reduced commission rate were allegedly related to the other discriminatory acts described above,

these two timely acts can be used to pull in the otherwise time-barred acts for this Court's

consideration under the continuing violation doctrine. *See* Pl.'s Mem. in Opp'n to Summ. J. [doc.

#47] at 13-15. In light of recent Supreme Court and Second Circuit precedent, the Court

disagrees.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme

Court considered the continuing violation doctrine and observed that Title VII "explains in great

detail the sorts of actions that qualify as '[u]nlawful employment practices' and includes among

such practices numerous discrete acts." *Morgan*, 536 U.S. at 111 (quoting 42 U.S.C. § 2000e-2).

In analyzing the statutory language of Title VII, the Supreme Court unanimously held that

"[t]here is simply no indication that the term 'practice' [in 42 U.S.C. § 2000e-2(a)] converts

*related discrete acts* into a single unlawful practice for the purposes of timely filing." *Morgan*,

536 U.S. at 111 (emphasis added). Rather, "[e]ach discrete discriminatory act starts a new clock

for filing charges alleging that act." *Id.* at 113. Moreover, *Morgan* clearly stated,

> "Mere continuity of employment, without more, is insufficient to prolong the life
> of a cause of action for employment discrimination." In order for the time period
> to commence with the discharge, "[a plaintiff] should have identified the alleged
> discriminatory acts that continued until, or occurred at the time of, the actual
> termination of his employment." [A plaintiff] could not use a termination that fell

9

within the limitations period to pull in the time-barred discriminatory act. Nor
could a time-barred act justify filing a charge concerning a termination that was
not independently discriminatory.

*Morgan*, 536 U.S. at 112-13 (quoting *Delaware State Coll. v. Ricks*, 449 U.S. 250, 257 (1980)).

Though *Morgan* was a Title VII case, its teachings apply equally in the ADEA context. *See,
e.g., Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (observing that ADEA claims are
properly analyzed under the same framework as Title VII claims).

As recently explained by the Second Circuit in *Elmenayer v. ABF Freight System, Inc.*,
318 F.3d 130 (2d Cir. 2003), "an employer performs a separate employment practice each time it
takes adverse action against an employee, even if the action is simply a periodic implementation
of an adverse decision previously made." *Id.* at 134.  Applying the principles of *Morgan* and
*Elmenayer* to the facts of this case, it is readily apparent that the following are all discrete acts:
the alleged discrimination at the hands of Mr. Engelskirger at Defendant's Darien office from
February 1995 to December 1996; the transfer from the Darien office to the Fairfield office in
early 1997; the alleged denial of a sales aide at the Fairfield office from March 1997 to March
1999; the alleged denial of a private office at the Fairfield office from March 1997 until
November 1999; and the alleged verbal abuse by Mr. Fortuna at the Fairfield office in
September 1999.  *See, e.g., Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)
(an employer's decision to file disciplinary charges against an employee is a discrete act);
*Elmenayer*, 318 F.3d at 134 (rejection of an employee's proposed accommodation for religious
practices is a discrete act); *Milani v. IBM Corp.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004)
(failure to promote, failure to compensate adequately, and denial of preferred job assignments
are all discrete acts); *Fol v. City of New York*, No. 01 Civ.1115 THK, 2003 WL 21556938
(S.D.N.Y. Jul. 9, 2003) (rejection of an employee's request for a more ergonomic work station a

10

discrete act). Ms. Coudert can point to no "alleged discriminatory acts that continued until, or occurred at the time of" her actual termination in January 2002 or during her receipt of a reduced commission rate from September 2001 until January 2002. *Morgan*, 536 U.S. at 112-13. Furthermore, the time-barred acts cannot save a termination or reduced commission rate "that was not independently discriminatory." *Id.* at 113.

Thus, the Court rejects Ms. Coudert's argument that untimely discrete acts of alleged discrimination can be considered by the Court under the continuing violation doctrine. While time-barred conduct may still be offered "as background evidence to support [] timely claim[s]," *Morgan*, 536 U.S. at 102, counsel for Ms. Coudert conceded at oral argument that without the alleged discriminatory acts committed by Defendant before September 7, 2001, her case would be extremely difficult to present to a jury. The Court agrees, and holds that no reasonable jury could conclude that Ms. Coudert's termination and reduced commission rate, standing alone, constituted disparate treatment or retaliation in violation of the ADEA or Title VII. That is, without the direct link to the other alleged acts of discrimination, Ms. Coudert cannot rebut Defendant's legitimate, non-discriminatory, business reasons for her reduced commission rate and termination – namely, that she was a poor performer – nor show that Defendant's proffered explanations were mere pretext. *See, e.g., Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 470 (2d Cir. 2001) ("Although Plaintiffs met their *de minimis* burden of establishing a prima facie case of age discrimination, they have failed to produce sufficient evidence to support a rational finding that the non-discriminatory business reasons proffered by the defendant for the challenged employment actions were false."); *Hoyt v. Dep't of Children & Families*, 309 F. Supp. 2d 299, 308 (D. Conn. 2004) ("[A]lthough [plaintiff] has established a prima facie case, [defendant] has supplied a legitimate, non-discriminatory reason for its actions, and [plaintiff]

11

has failed to produce any evidence suggesting that this reason is pretextual.").

Accordingly, the Court grants Defendant summary judgment on both Ms. Coudert's ADEA and Title VII disparate treatment and retaliation claims.

## B.

To determine which of the aforementioned alleged incidents can properly be considered in connection with Ms. Coudert's hostile work environment claims, the Court must use a different standard than it used for the disparate treatment and retaliation claims, though it is one that also emanates from the Supreme Court's decision in *Morgan*. *Morgan* dictates that in evaluating a hostile work environment claim, "an employee need only file a charge within . . . 300 days of any act that is part of [a] hostile work environment" because "incidents comprising a hostile work environment are part of one unlawful employment practice, [and thus] the employer may be liable for all acts that are part of this single claim." *Morgan*, 526 U.S. at 118. "It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court." *Id.* at 117. *See also Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) ("A claim of hostile work environment is timely so long as one act contributing to the claim occurred within the statutory period."); *Mix v. Del. & Hudson Ry. Co.*, 345 F.3d 82, 89 (2d Cir. 2003) ("[A] plaintiff may assert a hostile work environment claim under Title VII if one predicate act occurs within the filing period, which is consistent with Title VII's requirement that the statute of limitations begins to run once the act has 'occurred.' ").

Nevertheless, the Supreme Court in *Morgan* also recognized that in certain circumstances, a series of discrete events spread over a long period of time could not be

12

considered a single unlawful hostile work environment practice. One such circumstance was

when "[a]cts contribute to a hostile environment on days 1-100 and on day 401, but there are no

acts between days 101-400." *Morgan*, 536 U.S. at 118. According to *Morgan*, in many cases

this would give rise to a hostile work environment claim based on the entire time period (days 1-

401), because "it does not matter whether nothing occurred within the intervening 301 days *so

long as each act is part of the whole*." *Id.* (emphasis added). However, of particular relevance

to this case, *Morgan* also cautioned that

> if an act on day 401 *had no relation to the acts between days 1-100, or for some
> other reason, such as certain intervening action by the employer, was no longer
> part of the same hostile environment claim*, then the employee cannot recover for
> the previous acts, at least not by reference to the day 401 act.

*Id.* (emphasis added).

In *Patterson v. County of Oneida, supra*, the court addressed the situation hypothesized

in *Morgan* and, following *Morgan*'s guidance, the Second Circuit affirmed a district court's

dismissal of a hostile work environment claim as untimely where "the only allegedly

discriminatory act of which [the plaintiff] complained that occurred within the 300-day period

was the termination of his employment [and the plaintiff] proffered no evidence to show that the

termination, even if discriminatory, was *in furtherance of the alleged practice of racial

harassment*." *Patterson*, 375 F.3d at 220 (emphasis added).

A number of pre-*Morgan* and pre-*Patterson* cases in the Second Circuit placed similar

limits on "discontinuous" hostile work environment claims, where the alleged acts of

discrimination are not sufficiently related. Specifically, the case law establishes that when there

is a significant gap in time between time-barred acts of alleged discrimination and timely

allegations, or when the alleged discrimination involves different supervisors and co-workers in

13

different offices, the continuity of an alleged hostile work environment claim may be destroyed.

*See, e.g., Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 568 n.4 (2d Cir. 2000) (finding that an

employee who left the employer approximately four years prior to the filing of an EEOC charge

was too far removed from Plaintiff's current co-worker to form the basis of a continuing

violation harassment claim, that there was no indication that the two employees acted in concert,

and that the fact that two individuals are engaged in similar discriminatory behavior is not

enough to demonstrate a discriminatory policy or practice where the record does not indicate

their behavior was related); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998)

(holding that gaps of one or more years between alleged incidents breaks the asserted continuum

of discrimination and precludes finding a continuing violation); *Little v. NBC*, 210 F. Supp. 2d

330, 368 (S.D.N.Y. 2002) ("[Plaintiff's] allegations involve different co-workers and supervisors,

in different time periods and on different shows. These differences preclude invocation of the

continuing violation doctrine."); *Hill v. Taconic Dev. Disabilities Svcs. Office*, 181 F. Supp. 2d

303, 318 (S.D.N.Y. 2002) (holding that allegations of discrimination occurring while employee

worked at one work site were not tied to discrimination that occurred two years later at another

site, under different supervisors and with different co-workers), *vacated and remanded on other*

*grounds*, 57 Fed. Appx. 9, 2003 WL 18604 (2nd Cir. Jan. 2, 2003) (unpublished); *Crosland v.*

*City of New York*, 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2001) (no continuing violation where

"retaliatory acts were taken by different supervisors in different departments"); *Alleyne v. Four*

*Seasons Hotel*, No. 99 Civ. 3432, 2001 WL 135770, at *8 (S.D.N.Y. Feb. 15, 2001) (rejecting

continuing violation argument because "[n]umerous different supervisors and decision-makers

from different departments were involved in the . . . [allegedly discriminatory acts] and there is

no evidence that their behavior was related in any way.").

14

The above-cited cases severely undermine Ms. Coudert's argument that the alleged discrimination at the Darien office under the supervision of Mr. Engelskirger should be considered alongside the alleged discrimination at the Fairfield office as part of one continuous hostile work environment claim. The parties do not dispute that Ms. Coudert was transferred from Defendant's Darien office to the Fairfield office in March 1997, and from that point onward, Mr. Engelskirger did not supervise Ms. Coudert. *See* Def.'s Local Rule 56(a)(1) Statement [doc. #42] at ¶¶ 2-3; Pl.'s Local Rule 56(a)(2) Statement [doc. #48] at ¶¶ 2-3. The Court also notes that in its prior ruling on a discovery dispute – and as confirmed at oral argument – Mr. Engelskirger was in no way involved in alleged discriminatory acts occurring at the Fairfield office, and in fact had retired from Defendant on or before early 2000. *See* Ruling and Order dated Oct. 7, 2004 [doc. #38] at 2, 5. Therefore, the Court cannot simply conclude that Mr. Engelskirger's biases and animosity towards women and older workers – which he allegedly exhibited at Defendant's Darien office from February 1995 to December 1996 – automatically infected Ms. Coudert's new supervisors at Defendant's Fairfield office in the period 1997 to 1999. In order to consider events at both offices as a part of the same hostile work environment claim, Ms. Coudert needed to provide some direct link between the alleged biases and conduct of the decision makers and supervisors in the Fairfield office and Mr. Engelskirger's conduct in the Darien office. But that is a link that Ms. Coudert explicitly disclaimed at oral argument. In sum, therefore, and as confirmed at oral argument, Ms. Coudert could present no evidence to link the alleged discrimination in the Darien office to the alleged discrimination at the Fairfield office.

Because Ms. Coudert has been subject to *two* distinct periods of alleged harassment by *two* separate supervisors in *two* separate offices, she cannot claim a continuing violation

15

constituting *one* unlawful hostile work environment practice by Defendant. Accordingly, Ms.

Coudert may not rely upon any of the alleged untimely discriminatory acts from the Darien

office in support of her timely hostile work environment claims involving the Fairfield office,

though in considering her hostile work environment claim, the Court will consider all of the

alleged conduct occurring during Ms. Coudert's tenure at the Fairfield office.[2]

## V.

The Court will now turn to the merits of the only remaining claims in this case – Ms.

Coudert's hostile work environment claims based on alleged age and sex discrimination by

Defendant at the Fairfield office for approximately five years from early 1997 until her

termination in January 2002.

This Court, in *Miller v. Edward Jones & Co.*, 355 F. Supp. 2d 629 (D. Conn. 2005),

recently had occasion to set forth the basic legal principles governing an employee's hostile work

environment claim based on sex:

> To state a claim for hostile work environment based on sex, a plaintiff
> must demonstrate conduct (1) that is "objectively" severe or pervasive – that is
> conduct that creates an environment that a reasonable person would find hostile or
> abusive [the "objective" requirement], (2) that the plaintiff "subjectively"
> perceives as hostile or abusive [the "subjective" requirement], and (3) that creates
> such an environment because of plaintiff's sex [the "prohibited causal factor"
> requirement]. In order to be actionable, the conduct complained of must be must
> be sufficiently severe or pervasive to alter the conditions of the plaintiff's
> employment. However, the fact that the law requires harassment to be severe or
> pervasive before it can be actionable does not mean that employers are free from
> liability in all but the most egregious cases.
> Courts use a "totality of the circumstances" approach for determining
> whether a plaintiff's work environment is sufficiently hostile to support a hostile
> work environment claim. Among the factors courts must consider are: (1) the

---

[2] Any separate hostile work environment claim based solely on Ms. Coudert's time in the Darien office would be untimely, because her last contact with the Darien office was early 1997 – well before the September 7, 2001 cut-off date.

> frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct
> is physically threatening or humiliating, or a mere offensive utterance, and (4)
> whether the conduct unreasonably interferes with the employee's work
> performance. A plaintiff can establish a hostile work environment by showing
> either that a single incident was extraordinarily severe, or that a series of incidents
> were sufficiently continuous and concerted to have altered the conditions of her
> working environment.

*Id.* at 636-37 (internal quotations, citations, and brackets omitted). The same basic standard

applies to hostile work environment claims brought under the ADEA. *See, e.g., Schnabel*, 232

F.3d at 87.

Defendant does not dispute that Ms. Coudert subjectively perceived the work

environment at Defendant's Fairfield office as hostile based on her age and sex. *See* Def.'s

Supplemental Mem. [doc. #60] at 4 n.2. The key question before the Court is whether a

reasonable juror could find that Ms. Coudert was subjected to an objectively hostile work

environment because of her age or sex.

Ms. Coudert does not present a very strong hostile work environment claim, and perhaps

this is why she never briefed it until prompted to do so by this Court at oral argument. On the

basis of the record presented by the parties, the Court has serious doubts whether a reasonable

juror could find that the denial of a private office, denial of a sales aide, the single incident of

verbal abuse by Mr. Fortuna, and the reduced commission she received were so "severe and

pervasive" that they "altered the terms of [Ms. Coudert's] employment." *Feingold v. New York*,

366 F.3d 138, 150 (2d Cir. 2004). *See also id.* ("[T]he law requires harassment to be severe or

pervasive before it can be actionable."); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768

(2d Cir. 1998) ("isolated remarks or occasional episodes of harassment will not merit relief

under Title VII") (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1306 n.5 (2d Cir. 1995)); *Martin*

*v. Town of Westport*, 329 F. Supp. 2d 318, 331 (D. Conn. 2004) ("sparse and largely conclusory

17

still present some evidence that would permit a reasonable juror to conclude that the alleged

denial of resources and negative impact on her work environment was *because of* her age or sex.

As will be apparent below, Ms. Coudert has failed to do so, and for this reason her hostile work

environment claims under both Title VII and ADEA fail.

The five alleged incidents of disparate treatment offered in support of her hostile work

environment claim are not what normally is considered harassing "offensive conduct" on the

basis of age or sex. *See, e.g., Petrosino v. Bell Atl.*, 385 F.3d 210, 214-15 (2d Cir. 2004) (sex-

based hostile work environment claim based on nude photos, cartoons, and crude graffiti, as well

as direct offensive remarks about female body parts). Here, Ms. Coudert does not allege she was

ever teased because of her age or sex, or that any offhand comments regarding her age or sex

were made. The only incident of alleged verbal "abuse" in the Fairfield office in Ms. Coudert's

five years there – the September 1999 verbal altercation with Mr. Fortuna – did not include

overtly age-based or sexual comments. *See* Counteraffidavit of Cheryl Coudert [doc. #49] at ¶¶

21, 36; Pl.'s Exs. to Counteraffidavit [doc. #51] at Ex. 4.[3]

Absent overtly age-based or sexual comments or incidents, a plaintiff claiming a hostile

work environment may offer "direct comparative evidence about how the alleged harasser

treated members of both sexes [or age classes] in a mixed-sex [and mixed-age] workplace,"

though "she must always prove that the conduct at issue was not merely tinged with offensive

sexual [or age-based] connotations, but actually constituted *discrimination* because of sex [or

---

[3] The Court notes that the only other alleged discriminatory comment made to Ms. Coudert was that she was "the worst victim type," though this comment was made in the Darien office by Mr. Engelskirger prior to 1997. *See* Counteraffidavit of Cheryl Coudert [doc. #49] at ¶ 8. Thus, even if it could be considered discriminatory on account of her age or sex, it is not properly before this Court.

19

age]." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998) (emphasis in

original) (internal quotations, brackets, and citations omitted). *See also Grey v. Norwalk Bd. of*

*Educ.*, 304 F. Supp. 2d 314, 327 (D. Conn. 2004) ("[T]he alleged harassment need not be

explicitly sexual or [age-based], though a basis must exist for inferring that the conduct occurred

because of the defendant's membership in the protected class."). Thus, the Court would have

expected Ms. Coudert to present reliable evidence of disparate treatment, such as similarly

situated men or younger workers who were treated more favorably than she was, or other women

or older employees who were denied access to the resources she claims she was denied. Yet,

Ms. Coudert has presented no such evidence, other than conclusory assertions by Ms. Coudert

about her own treatment at the hands of Defendant. *See* Counteraffidavit of Cheryl Coudert

[doc. #49] at ¶¶ 33-37; *see also Grey*, 304 F. Supp. 2d at 327 (plaintiff's bare allegations that she

was treated differently from males, absent additional evidence to support her case such as

comments based on sex or other similarly situated males who were treated differently, was

insufficient to go to the jury).

Defendant, on the other hand, has presented undisputed evidence that male co-workers

were also placed in the bullpen at the Fairfield office, and at least one other older broker of Ms.

Coudert's cohort received a private office. *See* Def.'s Local Rule 56(a)(1) Statement [doc. #42]

at ¶¶ 20-21; Pl.'s Local Rule 56(a)(2) Statement [doc. #48] at ¶¶ 20-21. Furthermore, Ms.

Coudert ultimately shared her allegedly sub-standard, closet-like office with a male co-worker.

*See* Counteraffidavit of Cheryl Coudert [doc. #49] at ¶ 26. Defendant also presented evidence

that female co-workers at the Fairfield office had considerably higher production numbers, and

because of their higher production, they were given sales aides and private offices. *See* Def.'s

Reply [doc. #56] at 6-7; *see also* Def.'s Exs. in Support of Summ. J. [doc. #41] at Exs. N, O, P.

20

Ultimately, Ms. Coudert asks this Court to permit a jury to conclude that any and all actions taken against her by Defendant were on account of her sex and age solely because she is a woman and she is over forty. Without in any way intending to demean Ms. Coudert or her concerns, the Court emphasizes that it would be abdicating its role as judge to allow her to take her claims to the jury on the basis of her age and her sex alone. *See Grillo v. New York City Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002) ("[Plaintiff] has 'done little more than cite to [his alleged] mistreatment and ask the court to conclude that it must have been related to [his] race. This is not sufficient.' ") (quoting *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001)). This Court is well aware that "Title VII does not establish a 'general civility code' for the American workplace." *Petrosino*, 385 F.3d at 223 (quoting *Oncale*, 523 U.S. at 81). Absent a reasonable inference that age or sex motivated the conduct that Ms. Coudert claims created a hostile work environment, her complaints constitute "the ordinary tribulations of the workplace," and as such, they are not actionable. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted).

Accordingly, Defendant is entitled to summary judgment on Ms. Coudert's hostile work environment claims based on age and sex.

**VI.**

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment [doc. #39] on all Plaintiff's disparate treatment, retaliation, and hostile work environment claims under the ADEA and Title VII. **The Clerk is directed to close this file.**

21

IT IS SO ORDERED.

/s/ _____Mark R. Kravitz_____
United States District Judge

**Dated at New Haven, Connecticut: June 30, 2005.**

22